MANHATTAN LIQUOR COMPANY V. JOSEPH A. MAGNUS & COMPANY.

Decided June 14, 1906.

**Corporation—Agent—Authority.**

General managers of corporations have only such implied powers as are either necessarily incident to the exercise of their general authority, or such as are customarily exercised by general managers of like concerns. If the act by which the corporation is sought to be bound is out of the usual course of business of the concern, those dealing with the agent are bound to enquire as to the authority of the agent, or deal with him otherwise at their peril. Facts considered, and held that a corporation was not bound by the act of its general manager.

Appeal from the County Court of Jefferson County. Tried below before Hon. D. P. Wheat.

*Greer & Minor* and *W. E. Miller,* for appellant.—The secretary and treasurer and general manager of a corporation has no authority by virtue of his official position to make or endorse the promissory notes of the corporation. Such authority must be conferred upon him expressly or impliedly by permitting him to exercise such authority. Fitzhugh v. Franco-Texas Land Co., 81 Texas, 311; New York Iron Mine v. Negaumee Bank, 39 Mich., 648; Merchants National Bank v. Detroit Works, 68 Mich., 620; Craft v. South Boston R. Co., 150 Mass., 207; City Ry. Co. v. First Nat. Bank (Ark.), 34 S. W. Rep., 89.

A private corporation incorporated under the general incorporation laws of Texas for the purpose of engaging in the retail liquor business has no power or authority to bind itself to pay the debt of another by making or endorsing promissory notes for the accommodation of another. South Texas National Bank v. LaGrange Oil-Mill Co., 40 S. W. Rep. (Texas), 328; Northside Railroad Company v. Worthington, 88 Texas, 570; Park Hotel Co. v. Fourth National Bank, 86 Fed. Rep., 742; Humbolt Mining Co. v. American Mfg. Co., 62 Fed. Rep., 356.

The evidence conclusively established the fact that Sol Chan individually, and not the Manhattan Liquor Company, bought Miller's saloon, and that appellant had no interest therein.

*Crook & Harris,* for appellee.—When the statute allows a corporation to borrow money and execute negotiable notes and requires it to have its principal office in this State, a director, who is also a stockholder, secretary and treasurer of the corporation, its general manager and only agent or officer in the State of Texas, where it kept its principal and only place of business, who bought and sold goods for the corporation and bought on credit in the name of the corporation, paid for the goods out of the funds of the corporation by its checks executed in the name of the corporation by himself as secretary and treasurer, and under the further facts and circumstances of this case, had the implied power to execute promissory notes of the corporation in payment of goods purchased by the corporation, or by himself in the regular line of his duties. Collins v. Cooper, 65 Texas, 461; Flewellen v. Mittenthal, 38 S. W. Rep., 235; Miller v. McDannell, 1 U. C., 259; Texas, etc., Oil Co. v. National Oil Co., 40 S. W. Rep., 159; Pullman v. Nelson, 22 Texas Civ. App., 228; Sparks v. Dispatch Transfer Co., 15 S. W. Rep., 418; Henderson v. San

Antonio & M. G. R. R. Co., 17 Texas, 560; National Bank of Jefferson v. Goolsby, 12 Texas Civ. App., 367; Fort Worth Publishing Co. v. Hitson, 80 Texas, 235; Emerson v. Skidmore, 7 Texas Civ. App., 646; Hamm v. Drew, 83 Texas, 81; Brownwood Ice Co. v. York Mfg. Co., 37 S. W. Rep., 339; Revised Statutes, articles 673, 661, 653; Merchants' Bank v. State Bank, 10 Wall., 604; Merchants' Bank .v. Central Bank, 44 Am. Dec., 665; McDermott v. Jackson, 97 Wis., 64; Grommes v. Sullivan, 26 C. C. A., 320 (81 Fed. Rep., 45); Sparks v. Despatch Trans. Co., 12 Law Rep. Ann., 718; Glidden v. Interstate National Bank, 16 C. C. A., 543; Chemical National Bank v. Armstrong, 8 C. C. A., 157; Merchants' National Bank v. Citizens' Gas Co., 159 Mass., 505 (38 Am. St. Rep., 453); Moore v. Gans Mfg. Co., 20 S. W. Rep., 976 (Mo.); Jones v. Williams, 61 Am. St. Rep., 445 (Mo.); Sinclair v. Rutledge, 95 Am. St. Rep., 968; Monument Bank v. Globe Works, 101 Mass., 57 (3 Am. Rep., 323); Taylor's Private Corporations, sec. 205, and cases there cited, and sec. 207; Randolph on Commercial Paper, sec. 370; 10 Cyc., 925; 10 Cyc., 940-g; Scofield v. Parlin & Orendorff, 10 C. C. A., 84.

There is a conflict among the authorities upon the question of validity of the contract of a corporation when made in excess of its powers, but when the contract is executed and the corporation has received the benefit, the weight of authority seems to be that the corporation shall be estopped to deny its authority to make it, and such is the well settled doctrine ·in this State. Texas W. R. R. Co. v. Gentry, 69 Texas, 635. ·

The preponderance of the evidence did not show that appellant did not buy Miller's saloon, nor derive any benefit from said purchase, but on the contrary the undisputed evidence showed that appellant did derive benefit from said purchase, and the great preponderance of the evidence showed that appellant bought the Stag Saloon from Miller and that Chan did not; the declarations and acts of· Chan, especially when not objected to, were sufficient to establish these facts in favor of appellees. Texas, etc., Oil Co. v. National Oil Co., 40 S. W. Rep., 159; Pullman v. Nelson, 22 Texas Civ. App., 228; Taylor on Private Corporations, sec. 210 and authorities there cited; Houston, E. & W. T. R. R. Co. v. Campbell, 91 ·Texas, 551; Western Union v. Bennett, 1 Texas Civ. Apps., 558; Brown v. Perez, 79 Texas, 157; Anvil Mining Co. v. Humble, 153 U. S., 548; Adams Express Co. v. Harris (Ind.), 7 Law Rep. Ann., 214 (16 Am. St. Rep., 315); Cochecho National Bank v. Haskell, 51 N. H., 116 (12 Am. Rep., 67); Hall v. Union Central Fire Ins. Co., 23 Wash., 610 (83 Am. St. Rep., 844); III Enc. of. Ev., 638, sec. 3.

GILL, Chief Justice.—This suit was brought by Joseph A. Magnus & Co., a partnership, to recover of the Manhattan Liquor Co., a corporation, the sum of $417 evidenced by a promissory note signed by Sol Chan and purporting to be endorsed by the defendant company. The plaintiffs sought to hold the defendant liable as an original maker of the note.

The liquor company filed a plea of *non est factum,* and defended upon these grounds:

1. That the note was executed by Chan for his own personal ends, and the company could in no event be held as the accommodation endorser of another's paper.

2. If Chan pretended that the transaction was the act of and for the

benefit of the liquor company, the plaintiffs had notice that the pretense was false, or else were put upon inquiry which if diligently pursued would have brought such knowledge home to them; and

3. That the purchase, in consummation of which the note was given, was made by Chan without authority of the liquor company, either express or implied, and was not within the apparent authority of Chan as general manager of defendant.

A trial to the court without a jury resulted in a judgment for the plaintiff. The defendant has appealed and renews its contention here.

The general history of the transaction as disclosed by the record may be summarized as follows:

The Manhattan Liquor Company is a Texas corporation organized for the purpose of buying and selling liquors and cigars at retail in the city of Beaumont. Its home office and place of business was at Beaumont, Texas, where it conducted a retail liquor house known as the Manhattan saloon under the management of one Sol Chan. The company came to be organized under the following circumstances. Sol Chan was in financial straits and out of employment. He had a wealthy friend in New Orleans, La., name Sig Kohlman, to whom he applied for aid. Kohlman was willing to aid him but did not care to risk his entire fortune in so doing. He therefore conceived the plan of organizing the corporation in question. Kohlman and his brother were the principal stockholders. They continued to reside in New Orleans. Chan and Myrick, the other stockholders, resided in Beaumont. Sig Kohlman was made president. Myrick was one of the directors. Chan was a member of the directory. Was secretary and treasurer and general manager and was the company's sole official representative in this State. The company, in furtherance of its purposes, established the Manhattan Saloon and placed Chan in charge. He proceeded to conduct it, buying the necessary stock from time to time either for cash or on short credit and paying for it by checks upon the company's funds consisting of receipts from the business, which he deposited in a local bank to the company's credit.

J. A. Miller & Co. owned and were conducting the Stag Saloon in Beaumont. They owed to Magnus & Co. on their stock of wines, liquors and cigars, $1,251. On the 19th day of June, 1903, Joseph A. Magnus & Co. received at their place of business in Cincinnati, Ohio, the following telegram addressed to them:

"Negotiations to buy Miller place. Can we owe you his accounts? Wire.

(Signed) Manhattan Liquor Co."

They knew that Sig Kohlman was largely interested in the Manhattan Company and, being aware of his financial standing, decided to accept the offer and release Miller. They therefore wired their acceptance and confirmed it by letter addressed to the Manhattan Liquor Co., at Beaumont. They promptly sent their agent, Louis Ochs, to close the deal. When he arrived at Beaumont he learned that Chan had sent the telegram and received the letter, and that Chan was the Manhattan Company's sole official representative in Texas. He proceeded to close the deal with Chan personally acting for the Manhattan Company, without inquiry as

to whether Chan had authority from his directory to make the purchase, and seems to have acted under the belief that the transaction came within Chan's general power. The company had not held Chan out as having such power, this being the only transaction of the kind that Chan had ever undertaken. As a matter of fact Chan had not been so authorized.

When Ochs arrived in Beaumont Chan had completed his arrangements with Miller and Company and nothing remained to be done but to assume the debts due Magnus & Co. This was to be arranged by execution on the part of the Manhattan Company of three notes for $417 each, payable to Magnus & Co., with interest, due respectively August 21, October 22 and December 21, 1903. Ochs prepared the notes and handed them to Chan for execution. When they were returned to Ochs he discovered that Chan had signed them individually. When he protested that he had agreed only to accept the notes of the Manhattan Company Chan told him to look on the back. He did so and found that Chan had endorsed the company's name on the back of each note. Upon Chan's assurance that it was "the same thing" he accepted them, but his suspicions were aroused. Chan, perceiving this, took him to the Stag Saloon and, still protesting that the two concerns were the same, took a case of liquor from the Stag stock, sent it to the Manhattan bar and then, opening a bottle, drank from it. Ochs afterwards saw a barrel of goods in the Manhattan stock which he believed to have been sold to Miller Brothers by Magnus & Co. Upon this evidence he inquired no further but accepted the notes and released Miller brothers. The first note was paid upon presentation, by whom it does not appear. The note due December 21 was assigned to the German National Bank. The one due October 22 is the basis of this suit. Thus far the evidence is undisputed.

The fact findings of the trial court are lengthy and for the purposes of this opinion need not be set out in full.

He found, among other things, that Chan did not buy the Stag Saloon for himself but for the Manhattan Company, and that the notes were signed by Chan with the endorsement of the liquor company in order to keep the affairs of the two concerns distinct and separate.

This finding is assailed as without sufficient support in the evidence, and we think the assignment is meritorious. The only evidence remotely tending to sustain the finding are the acts and declarations of Chan at the time of the execution of the notes, and these, in the light of the other evidence, are utterly refuted. Plaintiff's witness, Hegele, testified on cross-examination that Chan and Miller told him at the time that Chan had bought the Stag Saloon. That he conducted it as his own from the date of the purchase until October. That witness sold Chan goods on his individual account for use in the Stag Saloon and that witness never heard of the Manhattan Company owning or claiming it. Tippett's testimony is equally strong upon the point. It was also shown without dispute that in October Chan was adjudged a bankrupt, and Tippett, the trustee in bankruptcy, took charge of the Stag stock as the individual property of Chan and administered it as such.

These facts and the individual form which the notes assumed leave practically no doubt upon this record that Chan made the purchase for himself and endorsed the notes in fraud of both Magnus & Co. and the appellant. It is proper to note in this connection that the appellee

objected to the introduction of the declarations of Chan and Miller to the effect that Chan had purchased the Stag Saloon, but the objection was overruled and there is no cross-assignment. The evidence, for the purposes of this appeal, must be regarded as equally effective as if the testimony was not hearsay. It is also worthy of remark that counsel for appellants in open court stated that counsel for appellee had prepared the bill of sale from Miller & Co. and he was notified to produce it. The reply was not that counsel for appellee had not prepared it, but that he did not have it in his possession. Neither Chan nor Miller were called as witnesses. The contents of the bill of sale were not disclosed. The nature of the transfer of the Miller license was not shown, nor was it shown in what name the retail liquor dealer's bond for the Stag Saloon was executed. We are unable to perceive why these sources of information on this issue were ignored by counsel for both sides, but, as will be hereafter shown, the burden was on appellee to show that the Stag was purchased for and run in the name of the liquor company, in order to sustain this judgment, hence the failure to draw on these sources of proof operated to the detriment of appellees.

Counsel for appellees seek to sustain the judgment on the finding of the trial judge that if the fact conclusion be wrong that the "Stag" was purchased for the liquor company, nevertheless Chan pretended to Ochs that he was so purchasing it, and as the act was within the apparent authority of Chan the liquor company is bound by estoppel. Unless this contention is sound the judgment must be reversed.

The proposition depends primarily upon the result of the inquiry whether the purchase of the Stag Saloon and the assumption of the debts of that concern was within the apparent authority of Chan as secretary-treasurer and general manager of the liquor company and its sole representative in this State. We have no difficulty in concluding that within its charter or power the corporation could have established and conducted more than one retail liquor house in the city of Beaumont, and to this end may have bought out a rival saloon and conducted it. But it does not follow that Chan, as its general manager, could, under his general authority as such and in the absence of express authority from its directory, purchase and conduct another and distinct establishment from the one already established and then being conducted under his management. To so hold would be to clothe one officer of the concern with powers which were manifestly not intended to be conferred by the company when he was appointed, or at any subsequent time. If the act in question could properly be held to be within his general powers it would follow that he could execute the bond for the company thereby imposing its heavy penalties and obligations.

If he could buy out Miller & Company he could under the same authority purchase every other saloon in Beaumont, and for a like reason burden the company with as many additional bonds and obligations. He could, with equal reason, close out the Manhattan bar in bulk, and this though the expressed corporate purpose was to conduct a retail liquor business in Beaumont.

We think these radical consequences of such a holding render its unsoundness too plain to require extended discussion. It would amount

to a holding that the directory by appointing him manager had abdicated all their own powers.

It is doubtless true that a general manager of a corporation may do every necessary, proper, or customary thing in furtherance of the company's established business, but the power to buy and establish another and distinct business would clearly have to be expressly conferred. (Sparks v. Dispatch Trans. Co., 12 Law Rep. Ann., 715; Thompson on Corp., vol. 4, par. 4877; Tres Palacios Rice & Irr. Co. v. Eidman, 14 Texas Ct. Rep.; 852.)

General managers of corporations such as the one in question have such implied powers, and only such, as are either necessarily incident to the exercise of their general authority, or such as are customarily exercised by the general managers of like concerns. (4 Thompson on Corp., sec. 4877.) If the act by which the corporation is sought to be bound is out of the usual course of business of the concern those dealing with the agent are bound to enquire as to the authority of the agent and deal with him, otherwise at their peril. (4 Thompson on Corp., sec. 4887; Franco-Texan Land Co. v. McCormick, 85 Texas, 421.)

In Collins v. Cooper, 65 Texas, 461, cited by appellees, the general manager of a mercantile partnership, with general authority to conduct it as he thought best, borrowed money to aid in the conduct of the established business. The partnership was held liable for the debt. In disposing of the appeal Justice Stayton laid down the rule that in order to ascertain the powers which are to be implied from the direct or principal authority conferred in general terms on an agent to whom, as sole manager, had been intrusted the conduct of a large mercantile business, it is not only proper but necessary to consider the character of the business, the manner in which it is usual to carry on such business and, where the agency has continued for a long time, the manner in which the principal business was conducted.

The judgment against the principals was affirmed because the application of this rule disclosed that in the conduct of enterprises of such a nature it was usual and necessary to borrow money, and that in the particular case the agent had done so many times before.

By pursuing a like inquiry in the case before us it appears that the purchase of a rival business in its entirety and its conduct as a separate establishment was an extraordinary and unusual transaction and one that Chan had not undertaken before. It was not in any sense necessary to the conduct of the Manhattan Saloon, nor were the Miller & Company goods purchased for use in the Manhattan bar. That it was to be conducted as a separate concern was known to Ochs and his principals, and they so dealt with it afterwards. The case of Flewellen v. Mittenthal, 38 S. W. Rep., 235, is in no way applicable, for it decides no more than that one having authority to use another's name in the conduct of the saloon business may bind him by the execution of a note to secure money to pay for the saloon license. The license was necessary to the conduct of the business which he had the general authority to conduct in his principal's name. So in this case, Chan doubtless had the power to incur debts in the conduct of the Manhattan bar as such concerns are usually conducted and might have lawfully procured and renewed the license and bond. But inasmuch as the company had

chosen to open and conduct one saloon and place it under the general control of Chan it is clear that his general powers did not extend beyond the conduct of that saloon in the usual and customary way.

In Texas Oil Co. v. National Oil Co., 40 S. W. Rep., 159, the declaration of the general manager held binding on the company was made regarding a transaction coming confessedly within his powers. We do not deem it necessary to discuss the other authorities cited. None is more nearly in point than those discussed above.

The fact that the president and one of the directors resided out of the State and Chan was the sole official representative of the company in 'the State does not alter the result. His powers were still confined to the conduct of the company's established business unless otherwise extended, and the undisputed proof is that he had no express authority to purchase the Stag or any other saloon.

Counsel on each side have devoted much space to the discussion of the power of Chan to bind the company by an accommodation endorsement, or to issue commercial paper in the company's name. Also to the question of notice on the part of Ochs that Chan was purchasing for himself and not for his principal. In our opinion neither of these inquiries is material to the disposition of this appeal. We have found that the evidence is insufficient to support the conclusion that the purchase was made for the Manhattan Company. It was clearly not made for use in the Manhattan bar, but to be conducted as a separate concern, and was in fact so conducted whether for Chan individually or otherwise. The company can not be held by estoppel because there was no holding out that Chan had such authority.

The fact that Chan took a case and barrel of liquor to the Manhattan bar and there used it in connection with the business can not justify the judgment if in fact Chan made the purchase for himself. Nor in such event would plaintiffs be entitled to a judgment for the value of the goods so taken from the Stag for they had no lien upon the Stag stock.

For the reasons given the judgment is reversed and the cause remanded.                    *Reversed and remanded.*

### ON MOTION FOR REHEARING.

The motion for rehearing has been overruled.

In view of another trial we are requested to rule on the question whether if it should be found that Chan purchased the Stag Saloon and stock for the Manhattan Company with authority he could bind it by the execution of the promissory notes in question in the corporate name.

In our opinion if Chan bought the stock for the company upon due authority, the company would be liable upon the notes just as it would have been upon the original obligation had the notes not been given as evidence of the debt. There is no question of innocent holder in the companion case to this in which the German National Bank is plaintiff, and no equities which the liquor company could interpose in either instance.

This renders it unnecessary for us to write anything further in the German National Bank case.                    *Overruled.*