GULF GROCERY CO. et al. v. CREWS.†

(Court of Civil Appeals of Texas. Galveston. March 12, 1912. Additional Conclusions of Fact March 28, 1912.)

1. CORPORATIONS (§ 410*)—CORPORATE POWERS—REPRESENTATIONS BY PRESIDENT—NECESSITY OF AUTHORIZATION.

Where the directors of a wholesale grocery company, in whom the management of the affairs was placed by a statute and by-laws, did not authorize the president of the company to purchase a stock of groceries and fixtures, and the by-law defining the powers of the president only conferred the usual authority given the chief executive of any corporation, there was no such express authorization as would justify its making.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

2. CORPORATIONS (§ 397*)—CORPORATE POWERS—AUTHORITY OF PRESIDENT.

The authority of a president of a corporation as its agent must be found in the organic law of the corporation, in a delegation of authority from it directly and formally expressed through its board of directors, or be implied from custom or habit of doing business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1585, 1586, 1588, 1589, 1596–1601; Dec. Dig. § 397.*]

3. CORPORATIONS (§ 399*)—POWERS—AUTHORITY OF PRESIDENT TO ACT AS AGENT—IMPLIED AUTHORITY.

Where a corporation, though authorized by its charter to engage in both the wholesale and retail grocery business, had never carried on any other business than that of buying and selling groceries at wholesale, and the question as to whether it would embark in a retail business was under consideration by the directors, the purchase by the president of a retail business was not within the scope of his implied powers from the company's habit or custom of doing business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1602–1610; Dec. Dig. § 399.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by L. A. Crews against the Gulf Grocery Company and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

Joe Williams, of Port Arthur, Greer & Nall, and T. H. Bowers, all of Beaumont, for appellants. Dougherty & Gordon and John M. Conley, all of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant, a private corporation organized under the laws of this state, to recover damages for the alleged breach by appellant of a contract to purchase from appellee a stock of groceries and store fixtures. Plaintiff in his amended and supplemental petitions, upon which the case was tried, alleged in substance that the defendant, on or about January 29, 1910, acting by and through W. N. Holmes, its president and general manager and duly authorized agent, entered into a verbal contract with appellee, by the terms of which the defendant corporation contracted and agreed to purchase from plaintiff a stock of groceries in the town of Port Arthur, Tex., owned by plaintiff, together with the store fixtures owned and used by plaintiff in the grocery business he was then conducting in said town, and to "reimburse plaintiff for moneys expended by him in launching the said business by advertising the same at Port Arthur, Tex., contracting and agreeing with this plaintiff by parol to pay him the sum of dollar for dollar in cash for said stock of groceries and fixtures and agreeing to take charge of said stock of groceries and fixtures on the 1st day of February, 1910, and to take possession thereof and reimburse the plaintiff in full for all expenses incurred by him in launching said business by way of advertising the same in the city of Port Arthur, Tex., and paying him therefor in cash according to the inventoried cost price to plaintiff on the 1st day of February, 1910, and in consideration of the premises plaintiff agreed and contracted with the defendant, by parol, to sell and deliver said groceries and fixtures incident to said business, agreeing to deliver possession thereof to the defendant corporation on the 1st day of February, 1910, and according to the terms of the parol agreement with the defendant, as aforesaid, and to receive on said date the contract price therefor in cash as above mentioned." The inventory value of said stock of groceries is alleged to be the sum of $3,690.49; the cost price of the fixtures, $3,753.25; and the amount expended by plaintiff in advertising his business prior to the execution of said contract of sale, the sum of $500—the aggregate of said amounts being the sum of $7,943.74. Plaintiff further alleged that, in compliance with his part of the agreement, he tendered said stock of groceries and fixtures to defendant on the 1st day of February, 1910, but the defendant refused to accept them. Plaintiff further alleged that on the 1st day of February, when he tendered said stock of groceries and fixtures to the defendant, it requested plaintiff to hold the property and continue the operation of the business as the property of the defendant until March 10, 1910. Plaintiff further alleged that on the 14th day of May, 1910, he filed his first amended original petition, alleging insolvency on the part of the defendant Gulf Grocery Company, and praying for the appointment of a receiver for said company, and in lieu of a notice to show cause why a receiver should not be appointed, defendant, in order to indemnify plaintiff for any judgment that he might recover against

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

it, agreed to and did execute a bond payable to plaintiff, contingent upon the recovery of a judgment against the defendant, in which the sureties on said bond agreed to make themselves parties defendant to the said suit and agreed that any judgment rendered against the defendant might also be rendered against them in said suit; said sureties being the defendants W. N. Holmes and R. H. Woodworth.

The defendant filed its amended answer, on which it went to trial on January 16, 1911, and in addition to exceptions, answered by general denial, and specifically denied that it made the contract to purchase from plaintiff, or that it agreed to take over plaintiff's business; that it was contemplating going into the retail grocery business, and the same was discussed at its stockholders' meeting, and by resolution of its stockholders the directors of the company were authorized to enter into negotiations or to make such arrangements as to them might seem proper, and to determine whether or not the defendant should or should not enter into the retail grocery business in Port Arthur; that defendant's directors declined to go into the retail grocery business or to purchase plaintiff's stock of goods. That if defendant's agent, W. N. Holmes, did make the agreement with plaintiff, as alleged by him, then he was without authority to bind defendant, if ever he had agreed so to do, as such authority is lodged in defendant's board of directors by its by-laws and is not delegated to its president, which fact was well known to plaintiff, and he was advised at all times that W. N. Holmes did not have such authority. Defendant further alleged that plaintiff was indebted to it in the sum of $1,889.86, with 6 per cent. interest thereon from January 1, 1910, for goods, wares, and merchandise sold; that a receiver had been appointed for plaintiff's stock of goods and under order of the court had sold same and paid the proceeds to plaintiff's creditors, and defendant had received from said receiver a 20 per cent. dividend out of said proceeds, amounting to $377.96.

On January 16, 1911, plaintiff filed his second supplemental petition, and alleged that W. N. Holmes was at the time of the making of the contract sued on by plaintiff president and general manager for the Gulf Grocery Company, and as such had express authority under the by-laws of the Gulf Grocery Company in force at that time to make and enter into the contract sued on by plaintiff. Plaintiff also alleged that the said W. N. Holmes had authority to make said contract, because the same was within the charter powers of said Gulf Grocery Company. Plaintiff further alleged that, at the time said contract was entered into between plaintiff and defendant, plaintiff was indebted to defendant Gulf Grocery Company in a large sum of money, to wit, about $2,000;

that it was contemplated by the parties to said contract as one of the inducements thereto, and one of the moving considerations on the part of the defendant, that the debt of the Gulf Grocery Company should be deducted from the purchase price of the properties, and that the contract was in fact made by the defendant company, induced by the consideration that by making said contract it would in fact protect and collect its debt due it by plaintiff on open account for goods, wares, and merchandise, and by reason of these facts the said Holmes, as president and general manager of said corporation, had authority to make the contract sued on by plaintiff as a matter of law. Plaintiff also alleged that the defendant company was bound by said contract for the additional reason that said association is a trading corporation under the law and is bound by the rules of law governing trading corporations, and the defendant company being a trading corporation, and acting by and through its president and general manager, was liable for the contract made by him as a matter of law.

On the 16th day of January, 1911, defendant filed its first supplemental answer and, besides exceptions to plaintiff's second supplemental petition, urged a general denial.

The trial of the case before a jury on January 16, 17, and 18, 1911, resulted in a judgment in favor of the plaintiff, L. A. Crews, and against the defendants, Gulf Grocery Company, as principal, and W. N. Holmes and R. H. Woodworth, as sureties, in the sum of $7,943.74, less $1,511.90, with interest at the rate of 6 per cent. per annum from January 1, 1910, to January 18, 1911; the judgment entered amounting to $6,336.58, with interest from January 18, 1911, until paid at the rate of 6 per cent. per annum.

[1] The evidence is conflicting upon the issue of whether W. N. Holmes, the president of appellant corporation, made the contract with appellee as alleged in the petition; but the testimony of the appellee is sufficient to sustain the finding of the jury that the contract was executed as alleged. Upon the question of the authority of Holmes to execute such contract, the evidence is undisputed, and succinctly stated as may be, is as follows: He had no authority from the board of directors to make such contract, and it was made without the consent or knowledge of the directors. The business of the corporation was buying and selling groceries by wholesale. Its charter also authorized it to engage in the retail grocery business, but it has never done any retail business. At a meeting of the stockholders of the corporation held on January 18, 1910, the following resolution was passed: "That the board of directors be authorized during the next four months to change the method of doing business, to receive propositions of selling, and, if advisable, to go into the retail busi-

ness, or some such other line as they may think proper."

The board of directors had not acted upon this resolution at the time the contract between Holmes and appellee was made, and when they did act subsequently they determined not to engage in the retail business. Holmes was the president and general manager of the appellant corporation. The duties and powers of the president of the corporation are thus defined by the by-laws: "The president shall be the chief executive officer of the company; he shall preside at all meetings of the stockholders and directors; he shall have general and active management of the business of the company; he shall see that all orders and resolutions of the board are carried into effect; he shall keep in safe custody the seal of the company, and when authorized by the board, affix the seal to any instrument requiring same, and the seal when so affixed shall be attested by the signature of the secretary or treasurer; he shall sign all certificates of stock, and shall also sign deeds and liens on real estate when specially authorized by the board, and shall not transfer or mortgage the buildings or lands used as a place of business, except as authorized by the stockholders at a regular or special meeting; he shall sign or countersign all bills, notes, checks, contracts, orders and instruments as may pertain to the company's business. He shall deposit, or cause to be deposited, all moneys and other valuable effects in the name and to the credit of the company in such depositories as may be designated by the board of directors, and he shall have power to employ such help as he may require to the proper conduct of the company's business, and to fix salaries of employés. He shall be ex officio chairman of all standing committees. He shall submit a report of the operations of the company for the fiscal year to the directors at their first regular meeting of each year, and to the stockholders at the board all matters within his knowledge which the interest of the company may require to be brought to their notice."

The evidence shows that W. W. Cockrell was "the buyer and sales manager" for the company, and it is not shown that Holmes had ever purchased any groceries for the company. The circumstances under which the sale of appellee's stock and business was made to Holmes are thus detailed by appellee: "When said proposition was made, Mr. Holmes said, 'Crews, we are going to do a retail business.' I said, 'Is that so?' and he said, 'Yes.' I said, 'Well, I am surprised at that,' and he said, 'Yes, we are going into the retail business, and we want to buy you out.' I was surprised at that, and Mr. Holmes went on to say that they wanted my place of business, wanted my location. Well, they were heavy creditors of mine. I owed them more money than I did any one

else, which I thought then was one of the main reasons for wanting to buy me out. At any rate, he put the proposition to me. We agreed on the price, and they gave me 24 hours to give them an answer to the proposition. The contract was made with me by Mr. W. N. Holmes, the president and general manager of the Gulf Grocery Company. At said time I owed the Gulf Grocery Company considerable money, approximately $2,000. It was understood that they were to take over the business as established by me and go into the retail grocery business. As to the debts I owed, it was understood that they would be cared for in the settlement; of course, what I owed them and any outside indebtedness coming to other creditors. The main consideration or point made was that the Gulf Grocery Company should get their money and get it first."

Holmes, after testifying in substance that he made the offer to appellee subject to the approval of the board of directors, testified as follows: "At the time of this transaction Mr. Crews owed the Gulf Grocery Company about $1,900. Of course, when discussing this deal, that was one of our objects in particular, to take out the $1,900 Crews owed us. We figured, among other things, that we would collect the debt to the Gulf Grocery Company; that was the only way we could get any money out of it."

The first and second assignments of error complain of the refusal of the trial court to give special charges requested by the defendants, instructing the jury to find in favor of defendants on plaintiff's claim against them and in favor of the defendant Gulf Grocery Company on its claim against plaintiff for the sum of $1,511.90.

We think the evidence conclusively shows that Holmes was not authorized to make the contract sued on, and therefore the appellant was not bound thereby, and the trial court erred in refusing to instruct the jury to find for the defendants.

It is unnecessary to cite authorities upon the general proposition that a principal is not bound by a contract made by his agent not within the scope of the agent's authority, or apparent authority. It is undisputed that the board of directors of appellant, in which, by the statute and the by-laws of the corporation, the control and management of the affairs of the company were placed, did not by resolution or otherwise authorize Holmes to contract with appellee for the purchase of his stock of groceries and fixtures, and we think it clear that the by-law of the corporation, before set out, defining the duties and powers of the president and general manager of the company, did not confer upon such officer the power or authority to make a contract of this kind. This by-law only confers the usual authority given the chief executive officer of a corporation and does not delegate the power vested by the statute

and the by-laws in the board of directors to determine the policy of the company and the character and scope of the business to be conducted by it under the provisions of its charter.

[2] The power or authority of a president or general manager as an agent must be found in the organic law of the corporation, in a delegation of authority from it directly through its board of directors formally expressed, or be implied from custom or habit of doing business.

[3] The authority that may be implied in a president or general manager is only that which such officer usually exercises in the conduct of the ordinary business of the corporation, and his implied power to bind the corporation by his contract is limited to matters pertaining to the usual course of business of the corporation.

The evidence before set out shows that appellant corporation, while authorized by its charter to engage in both a wholesale and retail business, had never carried on any other business than that of buying and selling groceries by wholesale. The question of whether it would embark in the retail business was under consideration by the board of directors, and so far from said board having authorized Holmes to purchase appellee's stock of goods and the fixtures in his store building with a view of carrying on a retail business, it had not then decided whether it would go into the retail business. We think it clear that the purchase by Holmes of appellee's business was not a transaction arising in the usual course of appellant's business, and there was no habit or custom of doing business by the corporation from which authority on his part to make the contract of purchase could be implied.

Appellee's own testimony shows that the transaction was out of the ordinary course of the business of the appellant. He testifies that he was surprised when informed by Holmes that appellant intended to go into the retail business and desired to purchase his stock and fixtures and carry on a retail business at that place.

It may be conceded that appellee is right in the contention that, notwithstanding the fact that the authority to buy goods for appellant was conferred upon an agent other than the president and general manager, a contract made by the last-named officer for one or more car loads of goods for the wholesale grocery business would have been binding on the corporation, because the authority to make such contract might be implied from the powers generally incident to the office of a general manager of a corporation of this kind. But no such authority can be implied when the transaction, as in this case, is an unusual one not arising in the usual course of business of the corporation.

We cannot distinguish this case in principle from that of Liquor Co. v. Magnus & Co., 43 Tex. Civ. App. 463, 94 S. W. 1117. We think 146 S.W.—42

that case and the authorities therein cited fully sustain appellant's contention that the appellant corporation is not bound by the contract upon which plaintiff sues, because it had not authorized Holmes to make the contract, and he had no authority, implied or apparent, to bind the company by said contract.

We do not think the case of Bank v. Emery, 78 Tex. 498, 15 S. W. 23, cited and relied on by appellee, sustains his contention that, because of the fact that a part of the consideration which Holmes agreed to pay appellee for his stock of goods and fixtures was the extinguishment of the indebtedness of $2,000 due by appellee to the appellant corporation, Holmes was authorized, by virtue of his office as president and general manager of the company, to make the contract. In the case cited the purchase of the stock of cattle by the president of the bank was for the sole purpose of collecting a debt due the bank. The cattle were turned over to the bank by the president and disposed of by it and the proceeds appropriated. In making the purchase the president had agreed that the bank would assume and pay certain liens on the cattle in favor of third parties. The suit was by these lienholders against the bank to recover the amounts for which they held liens on the cattle. The Supreme Court, in affirming the judgment of the trial court in favor of the plaintiffs, say: "We are unable to conclude either as matter of law or fact that James, as president of the bank, did not in the first place have the authority to conduct the transactions that he did. Our opinion is that he did have such authority, and that it did not require a vote of the board of directors in each particular transaction to invest him with it. If there was any question about his authority, it would still remain that when the bank took possession of the property through its president, and with full knowledge possessed by him of the equities with which it was charged, and proceeded to convert it to its own use, it thereby became liable, to the extent of the value of the property, for the payment of the debts of the cattle corporation. We know of no reason why a national bank corporation may not, for the purpose of collecting a debt due to it from a creditor otherwise unable to pay the debt, have such transactions as occurred in this case. At any rate, after having had them and received the property, it cannot, while enjoying the fruits of the transaction, be absolved from the performance of its obligations to others assumed by its officers as a means of getting possession of the property on the plea that its acts were ultra vires."

The facts of this case fall far short of bringing it under the principles announced in the Emery Case. The collection of the debt due by appellee to the appellant corporation was merely incidental to the main purpose of the agreement, which was to pur-

chase appellee's business with the intention of conducting it in connection with the wholesale business of appellant corporation. The contract was executory, and appellant corporation had no notice of its execution and did no act from which a ratification could be implied.

Our conclusion being that the undisputed evidence shows that Holmes had neither express nor implied authority to bind the appellant corporation by his contract with appellee, it is unnecessary to consider the other questions presented in appellants' brief.

The judgment of the court below must be reversed, and judgment here rendered for appellants, and it has been so ordered.

Reversed and rendered.

### Additional Conclusions of Fact.

At the request of appellants, we make the following additional findings of facts, established by the undisputed evidence, that are pertinent to issues presented upon this appeal, which, in view of the conclusion reached by us upon the questions discussed in our opinion heretofore rendered in this cause, we deemed it unnecessary to determine, but which upon application to the Supreme Court for writ of error may become important:

On February 16, 1910, after the contract of sale had been made by appellee with Holmes, appellee, without the knowledge or consent of Holmes or appellant company, executed a mortgage upon a portion of the property embraced in said contract to secure the payment of $1,000 due by him to Floyd Mahoney. In the receivership proceedings thereafter had, as recited in our opinion, this Mahoney mortgage was established and foreclosed upon the property described in said mortgage.

After the institution of this suit appellee filed an application in the receivership proceeding to have $600 worth of the property included in said contract of sale set aside to him as exempt property. This application was granted, and the property was delivered to appellee and retained by him. After the rendition of the verdict and judgment herein, appellee filed a remittitur in the sum of $600, the value of the property turned over to him by the receiver on his said application, and the judgment was reformed giving appellee judgment for the amount found by the jury less said $600.

The total inventorial cost price of the goods, the cost of the fixtures, and the amount expended by the appellee for advertisement aggregated the sum of $7,943.44. The indebtedness due by appellee at the time the contract of sale was made, and which was to be deducted from or paid out of the amount appellee was to receive under the contract, was $7,766.57. Twenty per cent. of this indebtedness was paid by the receiver out of the proceeds of the sale by him of said goods and fixtures.