## A. J. ANDERSON CO. v. CITIZENS' HOTEL CO. (No. 11977.)

Court of Civil Appeals of Texas. Fort Worth. May 26, 1928.

Rehearing Denied June 23, 1928.

**1. Corporations ⬉370(3)—Building of hotel to upbuild business interests of citizens held "civic enterprise" within statute permitting corporations to contribute thereto (Rev. St. 1925, art. 1349).**

Building of a hotel, chief purpose of which was upbuilding of business interests of citizens and to supply lack of first-class hotel facilities, which lack was injuring growth and development of city and its business interests, *held* to be a "civic enterprise," within meaning of Rev. St. 1925, art. 1349, permitting corporations to contribute to civic enterprises.

**2. Corporations ⬉370(3)—In view of statute, private corporation is vested with authority to make contributions to civic enterprises as fully as if authority had been embodied in charter (Rev. St. 1925, art. 1349).**

In view of Rev. St. 1925, art. 1349, authorizing private corporations to contribute to civic enterprises, a private corporation is vested with authority to make contribution to civic enterprise as fully as if that authority had been specifically embodied in its charter.

**3. Corporations ⬉377(1)—Subscriptions for stock held "contribution" within meaning of statute authorizing private corporations to contribute to civic enterprises (Rev. St. 1925, art. 1349).**

Subscriptions by wholesale and retail electrical supply and sporting goods corporation for stock in hotel and civic enterprise *held* to be a "contribution," within meaning of Rev. St. 1925, art. 1349, authorizing private corporations to contribute to civic enterprises.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series Contribute—Contribution.]

**4. Corporations ⬉377(1)—That subscribers for stock of hotel contemplated some possible returns held not to deprive building of hotel of its nature of "civic enterprise" (Rev. St. 1925, art. 1349).**

Where chief purpose which prompted building of hotel was upbuilding of business interests of citizens, undertaking was no less a "civic enterprise" within Rev. St. 1925, art. 1349, authorizing private corporations to contribute to civic enterprises, because, as secondary consideration, subscribers for stock contemplated some possible returns thereof out of profits from operation of hotel.

**5. Corporations ⬉377(1)—Subscriptions for stock by corporation, if for authorized purpose, are not invalid because stock was to be issued at later date.**

If subscriptions of private corporation for stock were for an authorized purpose, they were not invalid by reason of fact that stock was to be issued to corporation at a later date.

**6. Corporations ⬉370(3)—Restriction in statute requiring consideration for indebtedness incurred by corporation held removed as applied to contribution to civic enterprise (Rev. St. 1925, arts. 1348, 1349).**

Rev. St. 1925, art. 1349, authorizing private corporations to contribute to civic enterprises, having been enacted subsequent to article 1348, prohibiting corporation from creating any indebtedness except for that which is reasonable, warranting sum expended, had effect to remove restrictions contained in article 1348 so far as it might have been applicable to contributions to civic enterprise.

**7. Corporations ⬉406(2)—Vice president and general manager of corporation with unrestricted powers held impliedly authorized to enter into stock subscription contract for corporation.**

Vice president and general manager of corporation having no by-laws, who was intrusted with unrestricted power to perform any and all acts within corporate powers of corporation, which he in his discretion might deem necessary or proper, *held* to have authority to act for corporation in subscribing for stock in hotel built as civic enterprise, and corporation was bound by subscription contracts entered into by corporations.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by the Citizens' Hotel Company against the A. J. Anderson Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Goree, Odell & Allen and L. L. Gambill, all of Fort Worth, for appellant.

Leroy A. Smith and R. B. Young, Jr., both of Fort Worth, for appellee.

DUNKLIN, J. The A. J. Anderson Company, a private corporation, has appealed from a judgment in favor of the Citizens' Hotel Company, another private corporation, for the sum of $1,500, with interest thereon, which was the balance claimed to be due and owing on two subscription contracts of $1,000 each, for capital stock in the Citizens' Hotel Company, executed in the name of A. J. Anderson Company, by E. L. Kinsolving, its general manager and vice president. Kinsolving, as the managing officer of the A. J. Anderson Company, paid $500 on the two subscriptions. Later the A. J. Anderson Company sued him to recover the amount so paid out, and that suit resulted in a judgment in favor of Kinsolving, and that judgment was affirmed by the Court of Civil Appeals of San Antonio, as shown in the report of the case in 262 S. W. 150.

The James McCord Company, another corporation, was likewise a subscriber to stock in the Citizens' Hotel Company, and it was sued by the latter company for an unpaid balance of that subscription, and a judgment in favor of the plaintiff in that case was affirmed by this

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

court, as shown in 287 S. W. 906. Applications for writs of error in both of those cases were dismissed by the Supreme Court for want of jurisdiction. The two cases are referred to here because of their similarity to the present suit, both as to the facts involved and the questions of law determined.

The charter of the Citizens' Hotel Company contained these provisions:

"The purpose for which it is formed is the establishment, maintenance, erection, and repair of the hotel building in the city of Fort Worth, Texas; the place where its business is to be transacted is the city of Fort Worth, Tarrant county, Texas."

The two principal defenses urged by the defendant may be briefly stated as follows: First, that the contract upon which the suit was instituted was ultra vires, in that the subscription contracts were beyond the charter powers of the corporation; and, second, that Kinsolving had no authority from the defendant company to bind it by the subscription contracts. Based upon the same reasons, the defendant, by cross-action, sought a recovery against plaintiff of the $500 that had been paid on the subscription contracts by Kinsolving as the defendant's general manager.

The case was tried before the court without a jury, and the trial judge filed the following as his findings of fact and conclusions of law, to wit:

"Findings of Facts.

"(1) I find that Kinsolving as general manager and vice president of defendant, on about February, 1919, subscribed to two written subscription contracts, being the ones sued on herein, wherein is subscribed for $2,000 of the capital stock, par value, in a hotel company then being organized, and which is now the plaintiff herein, and promised to pay to said company $2,000 thereof.

"(2) The conditions mentioned in said subscription contracts have all been complied with except in so far as the same were waived by instrument in writing, executed by the defendant and offered in evidence herein.

"(3) Calls were made for payments upon said subscriptions and that only $500.00 was ever paid thereon, and that the payments thereon have been in default since a time prior to the 16th day of April, 1921.

"(4) Said subscription contracts came to be executed as follows: The city of Fort Worth was in 1919 insufficiently supplied with first-class hotel facilities, and that such lack was injuring the growth and development of the city and its business interests, and was resulting in great inconvenience and dissatisfaction to the traveling public visiting said city; that the Chamber of Commerce of Fort Worth first undertook to supply such needed hotel facilities by trying to induce the investment of private capital in a hotel, but, having failed in this, in about February, 1919, the Chamber of Commerce and certain other public spirited citizens of Fort Worth made a general call among such citizens for a meeting to take steps to secure a new hotel for the city, which meeting was held at the Metropolitan Hotel in said city. At said meeting a plan was adopted to build the hotel by subscription to capital stock of a company to be organized for that purpose, subscriptions to be solicited generally from the individuals, business corporations, and concerns in Fort Worth, and to that end subscription contracts identical in terms to the one sued on herein, save as to the amount subscribed, were then circulated throughout the city, and about 775 persons, firms, and corporations of Fort Worth subscribed thereto, and upon such subscriptions plaintiff corporation was chartered on the 16th day of April, 1919, there having then been subscribed to the capital stock of plaintiff $1,609,-400 par value, divided into 16,094 shares of $100 each. On the 16th of June, 1923, plaintiff corporation's charter was amended and its capital stock was increased to $1,840,000; shares being still $100 each. I find that the formation of said corporation and the erection of said hotel was a community undertaking and a civic enterprise.

"(5) That the purpose in organizing said corporation and erecting said hotel, and of the various subscribers to the stock thereof, including defendant, was not primarily to make money out of the hotel, but was for the general welfare of business in the city of Fort Worth, however I find that the citizens promoting said venture and Kinsolving in good faith believed at the time that the hotel would pay its stockholders a reasonable return on the investment, and that they so represented their belief in soliciting subscriptions, including the subscription of defendant.

"(6) That the plaintiff corporation, with the proceeds of said subscription contracts, aided by a mortgage loan of $1,250,000, purchased the site and erected thereon the modern, fireproof hotel mentioned in said subscription contract, and which is known as 'The Texas.'

"(7) That the defendants, in executing said subscription contracts, and the said waiver hereinbefore referred to, acted by and through E. L. Kinsolving, who was at said time and for several years prior thereto its vice president and general manager. That at said times he was in the sole and exclusive management of said corporation. That, while there was a board of directors of said corporation, it met only once a year, at which no other business was transacted than the election of officers and the fixing of their salaries. A. J. Anderson was president of said corporation during all of said time, and was the owner of 90 per cent. of its capital stock, but on account of ill health he had given up the management of said corporation and had moved out to a resort known as Lake Worth, and took no part in the corporation's affairs. And that the soliciting committee believed that the subscription was made in good faith and that he had such authority and relied on his having same.

"(8) Defendant's powers as set forth in its charter were 'the buying and selling of merchandise by wholesale and retail, and it, at the time of subscribing for said stock, conducted a wholesale and retail electrical supply and sporting goods house in Fort Worth, which included the wiring of new buildings; it was the largest house of that kind in Fort Worth; its business depended in a large measure upon the growth and development of the city of Fort Worth.

"Conclusions of Law.

"(1) I am compelled, in respect to the decision of the Court of Civil Appeals, that the organization of plaintiff company and the erection of said hotel was under the circumstances a civic enterprise within the meaning of the Act of the Thirty-Fifth Legislature passed in 1917, and being now article 1349 of the Revised Statutes of 1925, but I make this conclusion without reference to my own views.

"(2) I also conclude for the same reason that the defendant's subscriptions to the stock of plaintiff corporation were under the circumstances contributions to a civic enterprise within the meaning of said statute, and was not unlawful or ultra vires of the power of defendant corporation.

"(3) I conclude that the defendant was and is bound by said subscription contracts executed by E. L. Kinsolving, and that the waiver also executed by him is binding upon defendant; E. L. Kinsolving had authority of defendant to execute each.

"(4) I conclude that the defendant is indebted to plaintiff upon said subscription contracts in the sum of $1,500, with interest thereon until paid at the rate of 6 per cent. per annum from April 16, 1921.

"(5) I conclude that the defendant is not entitled to recover upon its counterclaim for $500 paid on said subscription contracts, but defendant is entitled to delivery at once of certificate for said $500 paid, and for the remaining $1,500 of stock subscribed when said judgment shall have been satisfied by defendant."

This appeal is upon the following three propositions contained in appellant's brief:

"(1) The A. J. Anderson Company being a private corporation chartered for the purpose of 'buying and selling wares and merchandise by wholesale and retail,' and the Citizens' Hotel Company being a private corporation chartered for the 'establishment, maintenance, erection, and repair of a hotel building,' the contract by said A. J. Anderson Company to purchase shares of the capital stock of said hotel company was not a contribution to a civic enterprise, but was an ultra vires undertaking and contract which was not enforceable against it.

"(2) The only evidence of authority in E. L. Kinsolving to bind the A. J. Anderson Company was that he occupied the position of general manager of the store operated by that company, and there was therefore no evidence that said Kinsolving had express, implied, or apparent authority to execute the stock subscriptions sued upon in the name of that company; said stock subscriptions being unusual and extraordinary transactions not arising in the usual course of the business of said company.

"(3) All the evidence showed that the Citizens' Hotel Company had obtained and received $500 of the appellant's funds which was paid upon one of the subscription contracts by Mr. Kinsolving without any express, implied, or apparent authority to do so, and without any right in the appellee to receive the same, and the appellant was therefore entitled to recover judgment in that amount."

By article 1349, Rev. Statutes of 1925, authority is expressly given a private corporation, such as the A. J. Anderson Company, to contribute to civic enterprises or organizations, The Act of the Thirty-Fifth Legislature of 1917 embodying that article of the statute is quoted in the opinion in the James McCord Co. Case, supra.

[1] It is our opinion that the building of the hotel undertaken by the plaintiff in the case was a civic enterprise within the meaning of those statutory provisions. See James McCord Co. v. Citizens' Hotel Co., supra, and authorities there cited; also A. J. Anderson Co. v. Kinsolving, supra.

[2-4] By reason of those statutory provisions, the A. J. Anderson Company was vested with the authority to make contributions to a civic enterprise as fully as if that authority had been specifically embodied in its charter. And we are of the opinion further that the subscriptions for stock in the name of A. J. Anderson Company were contributions within the meaning of that article of the statute. See Black's Law Dictionary (2d Ed.) p. 264, and other authorities cited in the opinion in James McCord Co. Case. Since the chief purpose which prompted the building of a hotel was the upbuilding of the business interests of the citizens, the undertaking was no less a civic enterprise by reason of the fact that as a secondary consideration the subscribers for stock contemplated some possible returns therefrom out of the profits arising from the operation of the hotel. Anderson Co. v. Kinsolving, supra.

Appellant has cited article 1348 of the statutes, which was enacted in the year 1907, which reads as follows:

"No corporation, domestic or foreign, doing business in this state shall create any indebtedness whatever except for money paid, labor done which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received reasonably worth at least the sum at which it was taken by the corporation."

[5] It is insisted that, since the stock subscriptions created an indebtedness of the company, it was not liable thereon because no consideration was received therefor, such as is required by the terms of that statute. In the first place, according to the terms of the subscription contracts necessarily, appellant would receive the stock for which he subscribed whenever the subscriptions are paid, and neither the appellant nor any of the stockholders could in any event be held liable for any amount beyond the amount of the subscription. If the subscriptions were for an authorized purpose, they were not invalid by reason of the fact that the stock to be given as a consideration therefor was to be issued to it at a later date. Richardson v. Bermuda Land & Livestock Co., 231 S. W. 337, by Com. App.; H. & T. C. Ry. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S. W. 204, 226 S. W. 140. The money to be

paid on the subscription contracts by the appellant would, of course, be assets of that company, and, according to the provisions of article 1349, that company was expressly authorized to use such assets as a contribution to a civic enterprise, and that article does not require a present payment of such contributions as are therein authorized, nor does it provide that the corporation making such a contribution shall receive any returns therefor, other than the benefits which it may enjoy in common with the public as a result of the accomplishment of the purpose for which the contribution is made. The fact that the contributions in this case were not cash contributions, but were by way of contracts to pay in the future the amounts subscribed, did not render the amounts subscribed any the less contributions when paid.

[6] Article 1349 having been enacted in 1917, it had the effect to remove the restrictions in the old article 1348, so far as the latter article might have been applicable to the contributions to a civic enterprise.

[7] Many authorities are cited by appellant to support its contention, in substance, that, while Kinsolving, as general manager of appellant's business, was vested with implied authority to do such acts as are necessary in the usual and ordinary course of the business carried on by appellant, yet he had no implied authority to bind the corporation by the subscriptions in controversy, because the same are extraordinary, unusual, and not such acts as are customarily exercised by a general manager of a like concern. Among the authorities cited to support that contention are Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222; Franco-Texan Land Co. v. McCormick, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815; Gulf Grocery Co. v. Crews (Tex. Civ. App.) 146 S. W. 654; Manhattan Liquor Co. v. Magnus & Co., 43 Tex. Civ. App. 463, 94 S. W. 1117; Manhattan Life Ins. Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099; 3 Fletcher on Corporations, §§ 3269, 3273, 3276, 3278; 14a Corpus Juris, 424.

The facts found by the trial court as set out in his findings, shown above, with respect to the authority of Kinsolving to execute the subscription contracts, are well supported by the evidence. In addition to the facts so recited, might be mentioned the undisputed proof that the A. J. Anderson Company had no by-laws. It thus appears that the corporation intrusted Kinsolving with unrestricted power to perform any and all acts within the corporate powers of the corporation, which he, in his discretion, might deem necessary or proper in the conduct of the business. Under such circumstances he was essentially the alter ego of the corporation, and we approve the findings of the trial court to the effect that the appellant company was bound by the subscription contracts in controversy. This conclusion we believe has ample support in such authorities as the following: Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 131 S. W. 623, 132 S. W. 815; Mechem on Agency (2d Ed.) vol. 2, p. 706; Fletcher on Corporations, §§ 3269, 2098, 2115; Kitzmiller v. Pacific Coast & Norway Packing Co., 90 Wash. 357, 156 P. 17; A. & P. Ry. Co. v. Reisner, 18 Kan. 458; Jenkins S. S. Co. v. Preston (C. C. A.) 186 F. 609, and authorities there cited; Robinson v. Moark-Memo Consolidated Mining Co., 178 Mo. App. 531, 163 S. W. 885.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed.