FRANCO-TEXAN LAND COMPANY v. THOMAS McCORMICK ET AL.

NO. 128.

1. **Agent of Corporation.**—The authority of an agent of a corporation must depend, as that of the agent of a person, on the terms of his appointment; and such agencies differ, in this respect, only in that a corporation can not empower an agent to do any act which may not lawfully be done under its charter, while a person may empower his agent to do any act not forbidden by law. Acts by an officer of a corporation in excess of power conferred by the charter are void, in the sense that they can have no effect to divest the corporation of right in or to any property belonging to it.

2. **Same — Facts Recited Affecting Subsequent Purchasers.**— Duke, president of the Franco-Texan Land Company, executed a deed to Miller conveying 26 sections of land. The deed recited a consideration of $49,920, of which $9920 was cash, a note for $950, " and the further consideration of a certain promissory note for $40,000, bearing 10 per cent interest from date, executed by J. H. Milliken, December 15, 1884, to W. G. Martin or bearer, and transferred by said Martin to R. W. Duke, president of the Franco-Texan Land Company, on the 18th day of February, 1885, due and payable on December 16, 1886, the same being in full payment of the balance of the purchase money of the lands hereinafter de- scribed." *Held*, such recitals affected subsequent purchasers with notice of the want of power in Duke to convey the lands of the corporation in the mode recited. The charter gave no right to exchange lands for personal property, and the taking of the notes in full payment was equally beyond the power of the president.

3. **Presumptions.**—If a state of facts possibly might have existed under which the president of the corporation would have been empowered to sell and convey the land as he did. their existence can not be presumed if they are necessarily outside of the usual course of the business of the corporation, or the leading purpose of its existence.

4. **Duty to Inquire into Extent of Agency.**—If the power to be exercised by an officer of a corporation be not within the apparent power of such officer, but which for its existence must invoke some extraordinary state of facts, then it would seem to be the duty of the person seeking to acquire rights through the exercise of the power to inquire as to its existence, and as to the facts bringing it into being.

5. **Case in Judgment.**—McCormick sued the Franco-Texan Land Company for 640 acres of land, one of 26 sections included in a deed executed by Duke, president of the company. The defendant company by cross-bill alleged ownership, and asked that the title under which the plaintiff held be cancelled, the plaintiff being a remote vendee of Duke. Defendant also asked equitable relief in event the deed by Duke should not be annulled. *Held*, that the failure of the defendant company to account to the plaintiff for a proportional amount of the purchase money could not prevent the recovery of the land by the defendant company,

it having the legal title. Equitable relief, however, upon proper pleadings, could be granted the plaintiff for proportional amount of purchase money, upon his losing the land.

6. **Liability of Corporation.**—Before any right against a corporation to recover the purchase money paid an officer in an illegal sale of its property, upon its recovery from the vendee holding under such invalid sale, it must be shown that the money was appropriated to the use of the company through some corporate agency acting within its express or implied authority. A payment to the officer alone is not a payment or delivery to the company, such as to fix liability upon it.

7. **Case Adhered to.**—Fitzhugh v. Franco-Texan Land Company, 81 Texas, 314, adhered to.

WRIT OF ERROR to Court of Civil Appeals, Third District, in case on error from Taylor. Tried below before Hon. T. H. CONNER.

This was an action in trespass to try title by Thomas McCormick for section 3, block 18, Texas & Pacific Railway surveys, against the Franco-Texan Land Company, a corporation. Joined as defendants were W. G. Martin and George Clayton, who were alleged to be bound to plaintiff upon a bond guaranteeing the title. The defendant corporation pleaded not guilty, and by cross-bill asked equitable relief, that the title under which the plaintiff claimed be annulled.

October 18, 1889, judgment was rendered for the plaintiff for the land against the Franco-Texan Land Company, from which error was prosecuted.

October 11, 1892, the judgment in the trial court was affirmed by the Court of Civil Appeals, Third District, and a motion for rehearing was overruled.

Subsequently the said Franco-Texan Land Company applied to the Supreme Court for a writ of error, complaining:

"1. This being an action of trespass to try title by McCormick, and the defendant the Franco-Texan Land Company having pleaded not guilty, the burden of proof was on plaintiff McCormick to establish his cause of action, and the said McCormick as a matter of law was bound to take notice of the invalidity of the deed from said R. W. Duke, as president of said company, to said W. G. Martin, the vendor of said McCormick; and that the Court of Civil Appeals, under authority of Fitzhugh et al. v. Franco-Texan Land Company, 81 Texas, 314, having virtually so held, that the said land company was not bound in law, as a matter of defense to the action of trespass to try title, to tender the purchase money it had received under said invalid sale by its president.

"2. The said Court of Civil Appeals erred in holding in this cause that the case should be affirmed, because the plaintiff in error failed in its pleading over, asking cancellation of Crawford's title, to tender the purchase money received by the Franco-Texan Land Company on the invalid sale by its president, Duke; but the said Court of Civil Appeals should

have reversed and remanded the case to allow it to amend and to tender said purchase money, if it so wished, for this: That the District Court had, by its solemn judgment in this cause, ruled and held that the land company was not bound in this cause to tender the said purchase money, which judgment was and is unreversed and not appealed from; * * * it being inequitable, unjust, and contrary to law to defeat a right of recovery imperfectly stated, but capable of amendment, by holding it insufficient in the appellate court, when the pleading had been held sufficient in the trial court."

Writ of error was granted as prayed for.

The opinion sufficiently states the matters discussed.

*G. A. Kirkland*, for plaintiff in error.—1. The recitals in the deed from Duke to Martin, to the effect that the Milliken note for $40,000 had been received "in full payment of the balance of the purchase price," did give notice that the vendor's lien as to that note had been waived. When the vendor of land takes the note of a third person in payment, the presumption arises that the vendor's lien is waived, where it does not appear that he reposed as well upon said lien as upon such other security. Cresap v. Manor, 63 Texas, 485; 2 Washb. on Real Prop., 4 ed., 91; Faver v. Robinson, 46 Texas, 204; Flanagan v. Cushman, 48 Texas, 244.

2. In waiving the vendor's lien to secure unpaid purchase money, said Duke exceeded his power as an officer and agent of the Franco-Texan Land Company, and such waiver was a defect in said sale which would authorize said company to rescind said deed. McAlpin v. Cassidy, 17 Texas, 462; Garner v. Butcher, 1 Posey's U. C., 436; Story on Agency, secs. 165, 172, 60, 96, 106; Mora. on Corp., secs. 509, 577–581, 590, 606..

*McCall & Mosley*, also for plaintiff in error.—The plaintiff below, McCormick, claiming through the deed from Duke, as president of the defendant company, to Martin, is bound in law to take notice of the lack of power of Duke to make the sale to Martin, being privy thereto and claiming thereunder. Fitzhugh v. Land Co., 81 Texas, 306; Compress Co. v. Brick Co., 64 Texas, 338; Griffith & Wedge v. Morrison & Matthews, 58 Texas, 53; Reese v. Medlock, 27 Texas, 120; McAlpin v. Cassidy, 17 Texas, 464; Hoffman v. Hancock L. I. Co., 92 U. S., 162; 21 How., 441; 84 Am. Dec., 611; 42 Am. Dec., 771; Tayl. on Priv. Corp., 2 ed., art. 195, and note; Mora. on Priv. Corp., 2 ed., secs. 595, 593, 1 ed., sec. 59; 1 Pars. on Con., 42; 9 Pet., 607; 10 Cal., 354.

*Cockrell & Cockrell*, for defendant in error.— 1. The recitals in the deed from appellant to Martin do not show an express waiver of the vendor's lien, nor are they sufficient to give notice that the lien was intended to be waived; but on the other hand, if it was beyond the power

of Duke to have waived the lien, a purchaser would be justified in presuming that the lien was not intended to be waived, but that in making the deed he was acting within the scope of his authority. Porterfield v. Taylor, 60 Texas, 264; Dean v. Hudson, 1 Posey's U. C., 368; Peters v. Clements, 46 Texas, 122.

As to presumption that deed was authorized: Railway v. McCarthy, 96 U. S., 258; Express Co. v. Railway, 99 U. S., 191.

2. Even if the sale from appellant to Martin was void, appellant's answer showed no right to rescind the contract as to appellee, because it does not tender back the property received on said contract, nor any part of it. 2 Mora. on Corp., 715.

STAYTON, CHIEF JUSTICE.—The leading facts involved in this case, on which the rights of the parties largely depend, are the facts stated in the case of Fitzhugh v. Franco-Texan Land Company, 81 Texas, 306.

Before that action was brought Thomas McCormick had bought one of the sections of land in controversy in that cause, but as he was not made a party, the judgment therein rendered is not binding upon him.

He brought this action against the Franco-Texan Land Company, in form trespass to try title, alleging title to one of the sections the president of the company attempted to convey to Martin. He attempts to deraign title through Martin, and to so much of his action a plea of not guilty was filed.

He further alleged, however, that at the time he purchased the land company was asserting a lien on the land to secure the payment of the purchase money, and that in addition to the indemnity furnished through the warranty in the deed under which he claimed, he required and received from Martin and Clayton, the latter being only a surety, a bond to indemnify him against the lien claimed by the land company and against any claim the land company might make and enforce.

He made Martin and Clayton parties to this action.

His prayer against the land company was for the recovery of the land, and for cancellation of any claim that company might assert; and he prayed, in the event of a recovery against him by the land company, a judgment against Martin and Clayton on their indemnity bond.

The land company filed a cross-bill, in which it set up the invalidity of the deed made by its president to Martin, alleging the same matters as in the case before referred to; and under this prayed for a cancellation of the deeds under which plaintiff claimed.

In the event, however, that the company should not be entitled to hold the land, it prayed an enforcement of its lien, for the pro rata payment of the purchase money unpaid, against the section of land in controversy, but gave no basis upon which to do this other than a statement of the purchase money still due on the twenty-six sections of land, and their area.

To this cross-bill exceptions general and special were filed, and one of these exceptions questioned the right of the land company to the equitable relief sought, because there was no offer to return to plaintiff the money paid by him for the section of land.

The exceptions were overruled.

Plaintiff further answered the cross-bill, and, among other things, alleged, that he was an innocent purcher of the land, and that he paid $1020.50 for it, relying upon the deed made by the president of the company to Martin; and the evidence tends to show that he had no notice of the facts which gave invalidity to the deed made by the president of the land company, other than such as appeared on the face of that deed.

That he paid the purchase money for the land was proved, and the District Court rendered a judgment in his favor for the land, on the ground that he was an innocent purchaser.

In the decision of this case the Court of Civil Appeals waived a decision of the question whether the recitals in the deed made by the president of the land company to Martin were sufficient to affect plaintiff with notice of the invalidity of the deed, but affirmed the judgment, on the ground that the land company had not offered to pay to the plaintiff such part of the money received by the company from Martin as the section of land in controversy bore to all the land the president of the company attempted to convey to Martin.

There is nothing presented in this case that would render inapplicable the rules of law announced in Fitzhugh v. Franco-Texan Land Company.

It was not shown in either case that power was at any time expressly conferred on the president of the corporation; but, as held in the former case, apparent power, a holding out, in former course of dealing might justify persons in dealing with him to believe that he had power not only to execute a deed, but also to make a contract for the sale of land, in the usual course of business, by which the corporation would be bound.

The authority of an agent of a corporation must necessarily depend, as that of the agent of a person, on the terms of his appointment, and they differ, in this respect, only in that a corporation can not empower an agent to do any act which may not lawfully be done under its charter, while a person may empower his agent to do any act not forbidden by law.

This difference arises from the fact that the charter of a private corporation does not simply confer the corporate franchise, but is also an agreement between the shareholders as to the business to be conducted, and as to the powers to be exercised in reference thereto; and for the protection of all shareholders, all business conducted or powers exercised, when not authorized by the charter, must be held not to be binding on the corporation.

Acts so done in excess of power conferred by the charter are void, in

the sense that they can have no effect to divest the corporation of right in or to any property belonging to it.

In this respect, it matters not whether the power of the agent be expressly given or be implied from the usual course of business; for all persons must take notice, when they attempt to contract with a corporation, of the powers conferred upon it by its charter.

In the former case it was held, that the charter of the land company gave to it no power to exchange for personal property the lands it was authorized to acquire.

The president of the corporation having no power, under the charter, to convey to Miller, all persons claiming through the deed to him are affected with notice, of every fact recited in the deed made to him.

The deed to Miller recited a consideration of $49,920, of which $9920 was cash, a note for $950. and the balance thus, "and the further consideration of a certain promissory note for $40,000, bearing 10 per cent interest from date, executed by J. H. Milliken, December 15, 1884, to W. G. Martin, or bearer, and transferred by said W. G. Martin to R. W. Duke, president of Franco-Texan Land Company, on the 18th day of February, 1885, due and payable on December 16, 1886, *the same being in full payment of the balance of the purchase money of the lands herein after described.*"

This was all that appeared in the deed as to the character of the obligation *given in full payment of balance of purchase money*, but when the instrument was offered in evidence it appeared that it might be paid in horses at a price named.

Of this fact McCormick had no notice when he purchased, but he was affected with notice that a promissory note, made by a person other than the vendee, was taken in *absolute payment* of $40,000 of the purchase money, to secure the payment of which no lien was reserved.

We do not see in what respect the taking of the note of a third person *in payment* of so much of the purchase money would differ in principle from the taking of any other personal property in payment, for in either case it would be simply an exchange or barter of real estate, in so far, for personal property.

If the president of the company, having power to sell and convey for cash, or, under the by-laws, on credit, had sold and made a deed reciting that the land had been paid for in cash, then a person ignorant of the falsity of this might become an innocent purchaser; for the sale and conveyance would have been within the apparent power of the agent, and any person would be entitled to rely upon the express, or even the implied, representation that the facts existed that empowered him to convey.

If a state of facts possibly might have existed under which the president of the corporation would have been empowered to sell and convey the land as he did, their existence can not be presumed if they are neces-

sarily outside of the usual course of the business of the corporation, or the leading purpose for which it has existence.

"A party dealing with an agent is not entitled to assume the existence of any extraordinary state of facts in order to bring the acts of the agent within the scope of his apparent authority. Hence, if an act performed by an agent of a corporation would be in excess of the company's charter or the agent's authority, except under extraordinary circumstances, the company can be held bound by such act only provided these extraordinary circumstances did exist." Mora. on Corp., 606.

If the power to be exercised be not clearly within the express or fairly within the implied powers given by the charter, nor within the grant of power, with its necessary incidents, found in the appointment, nor within the apparent power of the agent, however that may be exhibited, but be a power which for its existence must invoke some extraordinary state of facts not of a nature to be known to the agent only, and clearly out of the usual course of business, then it would seem to be the duty of a person seeking to acquire right through the exercise of the power to inquire as to its existence and as to the facts which bring it into being.

In the usual course of business it is shown that sales were made for cash, or if on credit, with lien to secure the purchase money unpaid; while under the contract the president and Martin assumed to make, the paper of a third person was taken in absolute payment of the greater part of the purchase money; and thus, in so far, the lien the law would have given had the purchaser executed his own notes was destroyed; for to its existence the nonpayment of the purchase money was an essential fact.

Under the facts, we are of opinion the plaintiff was not an innocent purchaser, the agent having no real power to make the sale and conveyance made.

The president having, at most, only an apparent power to sell and convey in any case in due and ordinary course of business, we are of opinion that the recitals in the deed to Martin affect all persons claiming through it with notice that he exceeded his power in making the sale.

This being true, the plaintiff, on that branch of his case which asserted his title to the land, failed to show right in himself, simply because the land company had not been divested of title by the unauthorized conveyance made by its president.

This is not a case, in so far, in which a person seeking equitable relief must do equity before such relief will be granted, but is a case in which the plaintiff shows no title to the land, either legal or equitable, while the defendant shows a legal title.

In such a case the holder of the legal title is clearly entitled to a judgment; and that it may have asked, by way of cross-bill, relief of an equitable nature, in the event it was not entitled to the land, can not affect this question.

If the plaintiff be entitled to have defendant repay all or any part of the sum he paid for the land, upon showing the facts that entitle him to such relief, the court has full power to give it; but it has no legal power, under the facts of this case, to deny to defendant the right which results from legal title to the land, simply because it may not have offered to do equity.

If it be conceded that under the facts of this case plaintiff, through the conveyance to him, on failure of title to the land, would have the same right as would Martin had he not conveyed, we do not think that a case was made by the pleadings or proof which would ever have authorized a judgment against the defendant for any sum of money upon the conveyance to Martin being held void.

It was the right of the land company to repudiate the transaction its agent attempted to consummate, simply because he had no power to make the contract, and the company was therefore not bound by it; but under the general rules of equity it could not have the land and the money paid by Martin also; but the mere fact that the money was paid by Martin to the president of the company, when assuming to act for the company, would not furnish ground for recovery against the company, and still less for refusing to give full protection to defendant's legal right, because some part of the money had not been paid or offered to plaintiff by the company.

Before any such right can exist, it must be shown that the money was appropriated to the use of the company through some corporate agency, acting within the scope of its express or implied authority.    Taylor on Priv. Corp., 310–312; Mora. on Priv. Corp., 714, 715.

If the money was actually received by the corporation, it should account for it to the proper person if it had used it; if it had it on hand, or had property received under such circumstances, it should restore it, and ought to pay the value of anything received by it and used for a legitimate corporate purpose.

In this case there is nothing to show that any sum paid by Martin ever came into the possession of the corporation, or that it was applied to a corporate purpose, and under such facts no judgment could have been rendered in favor of the plaintiff on account of any sum that may have been paid to Duke.

A payment to Duke, the president, was not a payment or delivery to the corporation, sufficient in itself to fix liability on it.

It may be that the rule invoked in the Court of Civil Appeals could not be given effect, even in so far as to require the return of any of the money paid by Martin, in view of the fact, that if even received by the corporation, it may, as is indicated in the pleadings, have been returned to Martin in the cause before referred to, without notice from any source that plaintiff had bought the section of land.

If through his negligence in failing to give notice of his claim all the purchase money had been returned to Martin, a court of equity might possibly refuse any relief at all as against the defendant; but it is not necessary to decide these questions.

In view of the uncertainty as to the sum which should be returned for the purchase money of the section of land in controversy, if defendant be under obligation to do this at all, and of the fact that on demurrer the trial court held this not to be necessary, we do not think the judgment could be legally affirmed, even if the case was one in which the maxim, that "he that seeks equity must do equity," had application to the case.

The judgment of the Court of Civil Appeals and the judgment of the District Court will be reversed and the cause remanded, that the parties may so amend their pleadings as to have adjusted any equities that may exist between them.

It is so ordered.

*Reversed and remanded.*

Delivered February 23, 1893.

Motion for rehearing refused.