JUDSON et al. v. BELL et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 15, 1913. Rehearing Denied Feb. 5, 1913.)

1. CORPORATIONS (§ 429*) — AGENTS — UNAUTHORIZED CONTRACTS—LIABILITY OF PRINCIPAL.

Where a contract for the sale of land by a corporation contained no clause binding the corporation to furnish water for irrigation purposes, and, although its agent told the purchaser that water would be furnished, he also told him that he had no authority to make such an agreement, the corporation could not be held liable for its failure to furnish water.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1720–1723, 1725; Dec. Dig. § 429.*]

2. EVIDENCE (§ 129*)—SIMILAR FACTS—CONTRACTS.

Where a contract for the sale of land contained no agreement by the vendor to furnish water for irrigation purposes on the land, contracts by the vendor with other persons for the sale of other land, and containing such an agreement, were not admissible to show what the first contract should have been.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. § 129.*]

3. CORPORATIONS (§ 591*) — TRANSFER OF PROPERTY—RIGHT OF ACTION.

A corporation, which, after executing a contract for the sale of land, transferred all its stock, assets, and liabilities to another corporation, could not sue the purchaser for failure to deliver a share of the produce of the land as agreed as a payment on the purchase money.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2034, 2368–2372; Dec. Dig. § 591.*]

4. VENDOR AND PURCHASER (§ 44*)—MISTAKE—EVIDENCE—SUFFICIENCY.

In an action wherein the purchaser of land sought damages for the vendor's failure to furnish water for irrigation purposes, evidence *held* to show that an agreement to furnish water was not omitted from the contract by mistake, but was not intended to be inserted.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

5. JUDGMENT (§ 251*) — CONFORMITY TO PLEADINGS AND ISSUES.

In an action on a contract of sale of land, where defendant filed a cross-action for damages from the vendor's failure to furnish water for irrigation purposes, but made no claim

that the individual plaintiff executed the contract other than for the plaintiff corporation, a judgment against him individually was erroneous.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by Henry S. Judson and others against C. R. & B. Bell. From the judgment, plaintiffs appeal. Reversed and remanded.

Linn, Conger & Austin and Gaines & Corbett, all of Bay City, Tex., for appellants. R. R. Lewis and W. S. Holman, both of Bay City, and John T. Duncan, of La Grange, for appellees.

FLY, C. J. This is a suit to recover the value of two-fifths of the rice grown upon 163.6 acres of land, based upon a contract of sale and purchase made by and between H. S. Judson and Colonial Land Company as vendors and appellees as vendees, whereby it was agreed that the rice claimed should be given as the first payment on the purchase money of said land. Appellees answered and filed a cross-action for damages for failure of appellants to furnish water to raise the rice crop, claiming that the Colonial Land Company had contracted as part of the contract sued on to furnish water for five years to irrigate the land purchased by appellees at the rate of $6 an acre, but had omitted the clause embodying that agreement from the contract by mistake. Appellants denied that such contract had been made, and alleged that appellees had contracted for water from the Gravity Irrigation & Power Company. The court instructed a verdict for appellants for two-fifths of the amount received for the rice, amounting to $2,881.07.

The verdict of the jury is written in the charge, but is not found in the judgment of the court. However it is recited that the jury found $1,490.36 damages for appellees, and that was deducted by the court from the $2,881.07, the amount which the jury found for appellants and judgment was rendered in their favor for what was left, namely, $1,390.71, after such deduction.

[1] There is no clause in the contract of sale binding the Colonial Land Company, or any one else, to furnish water to irrigate the land sold to appellees, but the latter swore that Judson told them that, although he had no authority to agree to furnish water, he would do so, and for the purposes of corroboration, we suppose, introduced in evidence, over the objection of appellants, 28 different contracts for the sale of land, in several of which were found the following clause: "The Colonial Land Company agrees to supply water to the party of the second part for the irrigation of rice upon the land herein described for a period of five years from date hereof, and not to exceed $6 per

acre annual cash rental." As before stated, Judson told appellees that he had no authority to put that clause in the contract, and, when the contract was drawn up by the Land Company, it was omitted. Appellees had actual notice of the want of authority in Judson to bind the corporation, and they must have known that no such contract was made by the corporation. The Land Company was empowered by its charter to furnish water for irrigation purposes, but it did not attempt in any way to make such a contract with appellees. Their testimony fails to show that the corporation ever desired or intended to make such a contract. Appellees acted with full knowledge that the corporation had not contracted to furnish water to them. Franco-Texan Land Co. v. McCormick, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815.

[2] The contracts with other persons did not tend to show what the contract should have been between the corporation and appellees, and they should not have been admitted in evidence. The terms of the contract were in writing, and were signed by the parties to it, and it could not be altered or enlarged by proof of what was contained in other contracts. The evidence should have been excluded, and especially is this true when it appeared that Judson told appellees that he had no authority to make any such contract with them. Stockton v. Brown, 106 S. W. 423. This case presents some novel features. In the first place, an individual claiming to own the land joins in a suit on a contract with a foreign corporation which has no permit to do business in Texas, and which the evidence shows has no interest in the contract because it has sold out everything to another corporation. The evidence tends to show that the Colonial Land Company never at any time owned the land sold to appellees, but that it was the property of Clinton S. Woolfolk and Henry S. Judson. The lucidity of Judson's reasons for the Colonial Land Company making contracts for the sale of the land cannot be detected. He testified: "The reason we issued contracts in the name of the Colonial Land Company was because it was a selling corporation and participated in the profits; and we provided the money and received a part of the profits from the sales for so doing. The reason Mr. Woolfolk and myself did not consummate the deals without the Colonial Land Company was because the Colonial Land Company had a participating profit as a selling organization, and they would pay all expenses, pay all commissions, and keep all the records and make an accounting to us for half the profits. They were a party to the profits between what we paid for the land and what it was sold for, and in that way we would have a supervision over them." That evidence makes the reason for the existence of the corporation about as clear as the most enig-

matical utterance of the ancient Delphic oracle. Judson, however, in his testimony showed that he and Woolfolk owned all of the common stock and were the real owners of the corporation, and, when the corporation paid expenses, it paid them to Judson and Woolfolk, and, when it paid commissions, they went to the same parties, and, when part of the profits were paid to the corporation, they in truth paid Judson and Woolfolk. It is true Judson swore that some of the preferred stock was owned by other parties, but that condition may have arisen after this land transaction took place. At any rate, on a capitalization of half a million dollars, the preferred stockholders have paid in $4,000 or $5,000. Not one of them was named by Judson. The corporation was undoubtedly the creature of Woolfolk and Judson, used to forward their ends alone. It appears to be a mere stalking horse for them, owning nothing, only forming a breastwork and a cover for them. They are the corporation.

[3] It was shown that the Colonial Land Company was chartered in Delaware, had its main office in Illinois, and was attempting to sell land in Texas, which it did not own, and, without having a permit to do business in Texas, instituted a suit to recover a promised payment on land which it never owned at a time when it had sold everything it had on the face of the earth to another corporation chartered in Delaware with its main office in Chicago. It appears that both of these corporations were owned by Woolfolk and Judson, and that, in addition, they owned the Gravity Irrigation & Power Company. The Colonial Land Company should not under the circumstances have been permitted to prosecute a suit for the purchase money of the land, but it should have been dismissed from the suit. If it ever had any rights in the land, which the record fails to disclose, they have been transferred by it to the Realty Realization Company. Judson swore: "The Realty Realization Company took over the stock of the Colonial Land Company, and took over the assets and assumed its liabilities in the contract." The Colonial Land Company doubtless could, under its amended charter, have bound itself to furnish water at a certain rate per acre per annum, and, if it had done so, the new corporation which succeeded it and assumed its liabilities would be responsible for damages arising from a failure to furnish the water. There is no evidence tending to show, however, that it ever contracted to furnish water. The contracts made about the same time with other parties tended to show, if anything bearing on this case, an agreement that another corporation would enter into a contract to furnish water to appellees at a certain rate.

[4] The evidence does not tend to show, as alleged by appellees, that any clause binding appellants to furnish water was left out of the contract by mistake, but, on the other

hand, the uncontroverted evidence shows that the contract in each case was based on the written application to purchase. In each of the applications which were introduced in evidence the party seeking to purchase asked that water be furnished, except in that made by appellees. That appellees knew that appellants had not intended to furnish water is shown by the fact that they made a contract with the Gravity Irrigation & Power Company to furnish them with water, and they contracted on the same terms that the other parties did, and thereby obtained everything that they could have obtained if the clause in the other contracts in regard to water had been in theirs.

[5] Appellees in their cross-action did not claim that Judson signed the contract in his individual capacity, but that he was acting for the corporation. There was therefore no basis in the pleading for a judgment against Judson individually, although the court rendered such a judgment, and, there being no ground for rendering a judgment against the corporation, the whole judgment was erroneous.

Appellees did not seek to have the Gravity Irrigation & Power Company made a party to the suit, although they alleged that the Irrigation Corporation was under the control of appellants. The only contract they had for water was with a corporation that was not a party to the suit.

Upon what ground Judson and the corporation joined in bringing the suit does not appear from the pleadings nor proof, and can be accounted for only on the hypothesis, either that Judson realized that the Colonial Land Company had no right, title, or interest in the land, or that he concluded that his joinder with the corporation would relieve it of its lack of authority to sue, under the laws of Texas. Articles 1315 to 1321, Rev. Stats. 1911. If Judson and Woolfolk owned the land and contracted to sell it to appellees, they should sue for the purchase money, and, if Judson acting for himself and his partner, Woolfolk, bound them to furnish the water to irrigate rice for appellees and failed to do so, they should pay any damages resulting therefrom.

We deem it unnecessary to discuss the different assignments and cross-assignments, as the only controlling matters in the cause have been fully set forth herein.

The judgment is reversed and the cause remanded.