RICHARDSON et al. v. BERMUDA LAND & LIVE STOCK CO. (No. 6190.)

(Court of Civil Appeals of Texas. San Antonio. March 26, 1919. Rehearing Denied April 9, 1919.)

1. CORPORATIONS ⟋464—FARMING CORPORATION—ULTRA VIRES—NOTE FOR RAILROAD EXTENSION — "MONEY PAID OR LABOR DONE."

Vernon's Sayles' Ann. Civ. St. 1914, art. 1165, prohibiting creation of indebtedness of private corporations except for "money paid, labor done," etc., renders ultra vires note of private corporation organized for farming and stock raising, executed to a railroad in consideration of the future construction of a railroad into the county where such private corporation had large land holdings; such an indebtedness not being one for "money paid or labor done" for the corporation.

2. CORPORATIONS ⟋388(2) — ULTRA VIRES —ESTOPPEL TO URGE INVALIDITY.

When a litigant seeks to set up the defense of equitable estoppel, by reason of benefits received, against the illegal and ultra vires acts of the corporation, it must appear that the corporation, in the operation of its franchise rights and powers, received the benefits in the line of its necessary business and operation.

3. CORPORATIONS ⟋388(2) — ULTRA VIRES —ESTOPPEL.

A private corporation was not estopped to set up the defense of ultra vires to its note, ex-ecuted to a railroad in consideration of the future extension of the railroad through the county where the corporation owned lands, by its having received the benefit of such extension, which was in fact built, since it received no such benefits until after the execution of the note.

4. CORPORATIONS ⟋374—POWERS.

Corporations possess only such powers as are expressly granted, or such as are necessary to carry into effect the powers expressly granted.

5. CORPORATIONS ⟋370(2) — POWERS — EXPRESS VIOLATION OF STATUTE.

If a corporate act is in express violation of statute, as distinguished from being merely beyond the corporate powers conferred by express statutory terms, and if the corporation nevertheless violates the plain letter of the law, one so dealing with the corporation must take notice of the law and the statutory limitations placed upon the charter power.

6. EVIDENCE ⟋65 — PRESUMPTIONS — KNOWLEDGE OF LAW.

Every man is presumed to know the law.

7. CORPORATIONS ⟋370(1)—"ULTRA VIRES" —DEFINITION.

An act of a corporation is properly said to be "ultra vires," when it is beyond the powers conferred upon the corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ultra Vires.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Asher Richardson against the Bermuda Land & Live Stock Company. On plaintiff's death, the action was continued in the name of Mary I. Richardson and another, his executors. Judgment for defendant, and plaintiffs appeal. Affirmed.

Frank Huson and Denman, Franklin & McGown, all of San Antonio, for appellants.
Alex C. Bullitt, of San Antonio, for appellee.

COBBS, J. The petition discloses that appellee is a private corporation, organized under the laws of Texas. This action was instituted by Asher Richardson against the Bermuda Land & Live Stock Company on a note, or contract in writing, alleged to have been executed by defendant as an inducement to said Richardson to build a railroad connecting certain points in Dimmit and La Salle counties, Tex. Richardson having died prior to a trial of said cause, same was, on motion of Mary I. Richardson and Littleton V. Richardson, independent executors of Asher Richardson, ordered by the court to continue in the names of said executors.

Appellants (plaintiffs in the trial court) on November 14, 1918, filed their second amended original petition in said cause, alleging

that they were independent executors under the will of Asher Richardson; that they resided in Dimmit county, Tex.; that the defendant was a corporation duly incorporated under and by virtue of the laws of Texas, with its principal office at Beaumont, Jefferson county, Tex.; that defendant, on or about October 5, 1908, executed and delivered their promissory note or contract in writing to Richardson, the following being a substantial copy of same:

"Beaumont, Texas, Oct. 5, 1908.

"Whereas, we own the following described land, the same being situated in Dimmit county, Texas, known as survey No. ——; and whereas, said land will be greatly enhanced in value by the construction of a standard gauge railroad from a point on the I. & G. N. Railroad now in operation, into Dimmit county, Texas: Therefore, for value received, and as an inducement to Asher Richardson and his associates, and their assigns, to build a standard gauge railroad from a point on the I. & G. N. Railroad near Artesia to Asherton, on Moro creek, in Dimmit county, I, or we, agree and promise to pay to Asher Richardson and his associates at San Antonio, Texas, the sum of two thousand dollars, with eight per cent. (8%) interest per annum from maturity until paid.

"Said sum of two thousand dollars to become due and payable upon the completion of said railroad to Asherton and putting the same in operation, providing same is done on or before June 1, 1909.

"Should this note not be paid at maturity and suit is brought to collect same, then I agree to pay an additional 10% as attorney's fees.

"Bermuda Land & Live Stock Co.,
"W. B. Dunlap, President."

The petition further alleged that the time agreed on for the completion of said railroad had been extended by agreement of the parties to a period of 90 days; that certain correspondence evidencing said extension agreement was in defendant's possession, and that notice was given defendant to produce same; that in the event that said extension agreement could not be established, or in the event that same did not have the effect of an extension, then plaintiffs alleged a substantial compliance with the terms of the note or contract; that said railroad was completed and put into operation within the time contemplated by the parties and stipulated in the contract; that by reason of the execution of said note defendant was bound and liable to plaintiffs; that said note was past due and unpaid; that it had been necessary to place same in the hands of an attorney for collection, etc.; that plaintiffs were the legal owners and holders of said note; and that by reason of defendant's failure and refusal to pay same plaintiffs were damaged.

Said petition contained further allegations as follows:

"(7) Plaintiffs allege: That, at the time defendant corporation executed the note or contract herein sued on, said defendant was the owner of a large tract of land situated in Dimmit county, Texas, which said land was used by defendant in the furtherance of its corporate business, to wit, the raising, buying, and selling of live stock. That at the time said note or contract was executed there was no railroad running into Dimmit county, and that the railroad mentioned herein, built by Asher Richardson and known as the Asherton & Gulf, was the first railroad to enter said county. Said railroad extends from Asherton, in Dimmit county, to Artesia in La Salle county, Texas, a distance of thirty miles or more, passing next to defendant's said land, and affords a valuable means of transportation to the territory it covers. That defendant knew that a railroad connection in this county would be of extreme value to it in the conduct of its business and would greatly enhance the value of its property holdings and its facilities for pursuing its corporate purposes, and for this reason executed the note or contract in writing herein sued upon in order to induce said Richardson to build said road. Plaintiffs further say that by reason of the building of said Asherton & Gulf Railroad and its favorable location to the defendant's lands, said property of defendant has doubled in value, and that said increase in value of defendant's lands is far in excess of the amount herein sued for.

"(8) Plaintiffs further say that, by reason of the building of said Asherton & Gulf Railroad and its favorable location to defendant's lands, defendant's corporate business has greatly increased; that prior to the building of said railroad there was no modern means of transporting its cattle to the large live stock markets, and that in order to transport same, defendant was forced to drive same across country to the nearest railroad some twenty to twenty-five miles distant, or use divers other crude methods of transporting, often resulting in a loss in weight and impairing the value of said live stock. Plaintiff alleges that the increased value of defendant's business is far in excess of the amount herein sued for, which said increased value is the direct result of said Richardson's performance of the stipulations contained in the note herein sued on; and that the sum agreed to be paid as set out in said note was not more than a reasonable expenditure for the said benefits received and was an ordinary, usual and customary expenditure for such a corporation, under such circumstances, to obtain such facilities."

The appellee excepted to said petition, first, by a general exception, that "the same shows no cause of action against it," and by special exceptions, "because it is shown by the allegations therein that the defendant is a private corporation, organized under the laws of the state of Texas, and that the instrument herein sued upon is not shown to have been executed to evidence a debt created for money paid, labor done, or property actually received, but it is shown that it was executed for neither money received, labor done, or property actually received." The court sustained both exceptions and dismissed the case.

As all the questions are raised in the first and sixth assignments of error, and said as-

signments contain appellants' position, we group them and set them out for easy discussion, as follows:

"The court erred in sustaining defendant's general exception to plaintiffs' second amended original petition, because said petition alleged a good cause of action against defendant on a valid and binding contract in writing; said contract being one that defendant corporation is not prohibited from entering into by law."

"The court erred in sustaining defendant's first special exception to plaintiffs' second amended original petition and dismissing same, because said petition alleged facts showing that Richardson had, in good faith, executed his contract with defendant and that defendant had received the benefits from same at the expense of said Richardson; such facts being sufficient to estop defendant from thereafter pleading that it was without power to perform or enter into said contract."

We also set out appellants' proposition under their fourth assignment, as follows:

"Revised Civil Statutes, arts. 1164 and 1165, providing that no corporation * * * shall create * * * any indebtedness or employ its means and assets except for money paid, labor done or property actually received, being general statutes and merely declaratory of the common law, by which corporations are restricted in their powers to the limits and fixed purposes of their charters, have no more force than the common law; therefore, even if appellee's contract did violate said statutes, which is denied, same would not be such an illegality as would preclude the application of the doctrine of estoppel."

The corporate business of defendant, as alleged by plaintiffs, was that of only "the raising, buying and selling of live stock." There was no railroad running into Dimmit county when this note was given. This railroad was to extend from Asherton, in Dimmit county, to Artesia, in La Salle county, Tex., a distance of 30 miles, next to defendant's land. It is alleged that the road is now built and defendant's land doubled in value.

The question for us now to decide is as to whether the contract was valid, within the power and scope of the authority of the corporation to make, and if it was would the plea of ultra vires defeat appellants' recovery on account of the benefits and improvements coming to its land and property, and for that reason was estopped from setting up the illegality of the contract.

[1] Article 1165 of the Revised Statutes (Vernon's Sayles' 1914) limits the power of private corporations in this state to—

"create any indebtedness whatever except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the corporation."

It cannot for one minute be said aiding the building of a railroad by extending its credit comes within the powers of private corporations organized for farming and stockraising, and not railroad building, to participate in, for that is precisely what it was intended by this contract to do. By that note it "created an indebtedness," not "for money paid" or for "labor done" for it. But it is insisted on account of the increased value received by it due to the construction of that road the benefits are so great the defendant is estopped from pleading the statute to defeat the suit, and the plea of ultra vires should not thereby prevail.

It will be seen, when the note was executed and delivered, the defendant had built no railroad in Dimmit county, was receiving no benefits at the time, and its construction and operation was wholly prospective and contingent. It is not like a case where a private person may execute such a contract, but it is a case of a corporation whose state has wisely put limitations upon it to check wasteful and extravagant acts of officers who might otherwise waste the corporate property. Chief Justice Fly, in the case of McCaleb Co. v. Boerne Elec. Power Mfg. Co., 173 S. W. 1191, has given a very interesting and instructive discussion on this question generally. At the time this note was given the appellee had received no money paid nor labor done, and, as Judge Fly very correctly said in above case, which is applicable here:

"It was a direct attempt to lend the credit of one corporation chartered for specific purposes to another chartered for other purposes, which attempt was null and void"—citing authorities.

The appellant admits such to be the statutory law of this state, of course, but says it is but the enactment of the common law. Bond v. Terrell Manufacturing Co., 82 Tex. 312, 313, 18 S. W. 691.

[2] It is well-settled law, when a litigant seeks to set up the defense of equitable estoppel, against the illegal and ultra vires acts of the corporation, it must appear at the time of making the contract that the corporation, in the operation of its franchise rights and powers, received the benefits in the line of its necessary business and operation.

[3] In this case appellee in undertaking to induce the building of a railroad through Dimmit county to run near his property some time in the future, making an agreement to extend its credit and pay money for something to be done thereafter. This, we hold, when prohibited by our statute, as it is, cannot be done legally.

[4-6] Corporations possess only such powers as are expressly granted, or such as are necessary to carry into effect the powers expressly granted. 10 Cyc. 1096. With respect to the doctrine of ultra vires, a wellgrounded distinction exists between acts which are beyond the power conferred by statute upon the corporation in express terms and acts which are prohibited by the

express language of the statute itself. If the act is in express violation of a statute, and the corporation nevertheless violates the plain letter of the law, such party so dealing with the corporation must take knowledge of the law and the statutory powers and limitations placed upon the charter power, because every man is presumed to know the law. 10 Cyc. 1148.

[7] An act of a corporation is properly said to be ultra vires when it is beyond the powers conferred upon the corporation. Franco-Texan Land Co.. v. McCormic, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815. In suits between the corporation and strangers dealing with it, the question is whether the act is one which the corporation is not authorized to perform under any circumstances, or one it may perform for 'some purposes or under certain conditions. In the first case, it is strictly ultra vires, because from the law of its existence it has no power to perform. 7 Ruling Case Law, § 678, and cases cited.

This is not like those cases in which there is no direct statute forbidding the act, where benefits were received in the course of the business of the corporation, but its officers exceeded the charter powers or the by-laws of the corporation. The execution of this note was from the very beginning prohibited by a very plain statute, the corporation had no power to execute it, and it was and is void, and the trial· court committed no error in so holding.

We have carefully read and considered all the assignments and the 'briefs of counsel, and have examined the authorities cited by both parties, and find no error in the ruling of the court; and the assignments are all overruled.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes