**CARTER GROCER CO. v. DAY et al.†**

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 27, 1912. Rehearing Denied March 2, 1912.)

**1. COURTS (§ 169*)—JURISDICTION—"AMOUNT IN CONTROVERSY" — "ASCERTAINING SUM PAYABLE."**

A contract of employment which specified a definite salary ascertained the amount payable, within Sayles' Ann. St. 1897, art. 3101, providing that interest shall be allowed at 6 per cent. per annum on written contracts "ascertaining the sum payable," when no rate is specified, and the interest due under the employment contract does not enter into the "amount in controversy," as constituting damages, as affecting the jurisdiction of the county court of a suit on the contract.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413–416; Dec. Dig. § 169.*

For other definitions, see Words and Phrases, vol. 1, p. 376; vol. 8, p. 7574; vol. 1, pp. 530, 531.]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Application for writ of error dismissed by Supreme Court.

2. CORPORATIONS (§ 432*) — AUTHORITY OF VICE PRESIDENT—EVIDENCE—SUFFICIENCY.
In an action on a salesman's contract of employment, evidence *held* to sustain a finding that the employing corporation's vice president had authority to make the contract.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 432.*]

Appeal from Tarrant County Court; C. T. Prewett, Judge.

Action by T. J. Day and others against the Carter Grocer Company, in which defendant prayed in the alternative for judgment against A. A. Hunt. Judgment for plaintiff and for Hunt, and defendant appeals. Affirmed.

Bell & Milam, for appellant. B. K. Goree, for appellee Day. McLean & Scott, for appellee Hunt.

SPEER, J. T. J. Day filed suit in the county court of Tarrant county for civil cases to recover from the Carter Grocer Company a balance of $1,000 on the following contract: "This contract entered into this day between the Carter-Hunt Grocer Company and T. J. Day is to the effect that said company hereby employs said T. J. Day as salesman for the year 1910 at a cash salary of $125.00 (one hundred and twenty-five dollars) per month, but in this connection in addition to the above salary he is also to receive one-fourth of the gross profits on sales made by said T. J. Day after those profits have reached $9,200.00 (that is, all over and above the last said amount he shall receive ¼ of such profits) on sales made during the year 1910. It is further agreed that should said T. J. Day's employment with said firm cease before the expiration of the year 1910, by resignation or otherwise, that he is to receive the sum of $250.00 (two hundred and fifty dollars) per month during the year 1910 for each month that he may serve as such salesman; the latter amount in lieu of the cash salary of $125 per month and the profit bonus above mentioned. [Signed] T. J. Day. Carter Grocer Co., A. A. Hunt, V. P."

The plaintiff alleged that he had been paid on said contract the sum of $125 per month for eight months, but that the remaining $125 per month for said time had not been paid. The defendant corporation answered that the contract had been entered into by its vice president, A. A. Hunt, without authority, and contrary to its by-laws, and prayed in the alternative for judgment against Hunt. The trial resulted in a verdict and judgment in favor of the plaintiff and in favor of Hunt on the plea over.

[1] A preliminary question of the jurisdiction of the county court of Tarrant county for civil cases has been raised and argued by counsel. The contention of appellant is this: That, since, according to the allegations of appellee's petition, appellant was indebted to him for its failure to pay $1,000 according to the terms of the contract, it was also indebted to him for the detention of such sums of money, which damage, for the want of a better rule, would be measured by the legal rate of interest, but that such recovery would not be interest eo nomine, but damages instead, thus swelling the real controversy to a sum exceeding $1,000. That line of authorities is cited which holds that such damages, when not given as interest eo nomine, do enter into a consideration of the amount in controversy, affecting the jurisdiction of the court. So the question lying at the foundation of the contention is: If appellant be entitled to compensation for the detention of the money alleged to be due him, would such recovery be interest, within the meaning of our Constitution and statutes defining the jurisdiction of the courts. Article 3101, Sayles' Civil Statutes, is as follows: "On all written contracts ascertaining the sum payable when no specified rate of interest is agreed upon by the parties to the contract, interest shall be allowed at the rate of six per cent. per annum from and after the time when the sum is due and payable." Now, it is apparent that the contract sued on does "ascertain the sum payable," and this being true it follows that the interest thus allowed is interest as such, and should not enter into the consideration of the "amount in controversy." We think the question is definitely settled by Schulz v. Tessman, 92 Tex. 488, 49 S. W. 1031.

[2] Counsel have so narrowed the questions involved that a determination of one matter is necessarily decisive of the merits. It is this: Has appellant so held out its vice president, Hunt, as having authority to make the contract in question as to estop it to deny that he had such authority? It appears to be undisputed that appellant's by-laws provided that all salaries of employés should be fixed by the board of directors, but this, of course, is beside the question above stated; that is, whether Mr. Hunt acted within the apparent scope of his authority. Upon this point, it appears practically to be undisputed that appellee did not know of any want of authority in Mr. Hunt, but entered into the contract with him believing that he had full authority to bind the corporation, testifying that Mr. Hunt, as such officer of the company, had been in the habit of employing and discharging employés, and particularly the salesmen; that he was the officer in charge of the traveling men's department, employed and discharged them, and that he (appellee) had always dealt with him in the matter of employment; that, as far back as he had worked for the company, he had dealt with Mr. Hunt, and considered him the officer that employed salesmen; that the salary that Mr. Hunt from time to time agreed to had been paid by the company, and he

had never heard Mr. Hunt's authority questioned; that he began work in 1903, continuing until the time shown by the above contract. Mr. Hunt testified: "I had charge of the salesmen. I employed them and discharged them, and it was not questioned during the existence of our business until this instance. I never increased a man's salary in which there was any objection raised during my 15 years of the carrying on of that business. I increased our employés' salaries as I believed they deserved it along from time to time, and Mr. Carter did it also. I did not report this contract at that time at the directors' meeting; but immediately after Mr. Day spoke to me about leaving us in 1906 I took it up with Mr. Carter, and told him he was too valuable a man to lose, and I was going to retain him. He says, 'You have charge of the salesmen, and you take care of him,' and I did so. I had entire charge of the management of the salesmen. I employed and discharged them. When I made this contract with Mr. Day, I made it for the best interests of the corporation I was then connected with. I had had charge of employing salesmen there some 6 to 8 years. In case I saw or believed that I needed a man in a certain territory, I did not take the matter up with the board of directors; I went ahead and employed him. I fixed the salary. That had continued for a number of years. It was never referred to the board of directors. There never was an objection raised by any stockholder of that concern about me fixing the salary of an employé."

We have quoted sufficient testimony, we think, to show that the verdict and judgment are not without evidence to support them. Nor can the judgment be set aside, as contrary to the evidence, merely because each of the other directors contradicted the testimony of appellees. Each and all were vitally interested, and the matter has been solved by the jury and trial court in favor of the verdict. Of course, if appellee Hunt's making the contract he did with appellee Day was in any manner authorized by appellant, it cannot recover on its plea over.

The judgment is, in all things, affirmed.