TEXAS WINE & LIQUOR CO. v. WILLIS.

No. 15249.

Court of Civil Appeals of Texas.
Fort Worth.

May 11, 1951.

Rehearing Denied June 1, 1951.

Allen, Locke & Kouri, of Wichita Falls, for appellant.

Bullington, Humphrey, Humphrey & Fillmore, of Wichita Falls, for appellee.

CULVER, Justice.

This suit was filed by Texas Wine and Liquor Company, appellant, to recover possession of an automobile which the appellee, M. L. Willis, had retained after the termination of his employment with appellant. Appellee filed a cross-action in which he alleged that by the terms of his employment contract the appellant was indebted to him in the sum of $1300. Appellee alleged and testified that in January, 1948, one T. K. Dampeer, an agent of appellant, promised appellee that in addition to his weekly salary of $75 he would be paid $650 on each $250,000 of sales, payable in July and December of that year.

The only point upon which appellant predicates his appeal is that the court erred in permitting appellee to testify to above agreement since, he says, "no express, or apparent, or implied authority was shown to have been given to T. K. Dampeer to make such agreement for appellant."

In response to appropriate issues, the jury made the following findings of fact: (a) That T. K. Dampeer did contract on behalf of appellant Company to pay appellee Willis $650 for every quarter million dollars of gross sales made by him in 1948 as salesman for said Company; (b) that T. K. Dampeer did have the apparent or ostensible authority to make such contract on behalf of appellant Company; (c) that such contract was later ratified and acquiesced in by D. C. Hall, the President and principal stockholder of appellant Company; (d) that appellant was indebted to the appellee in the sum of $1362.42; and (e) that appellee Willis did not know that the contract in question would have to be approved by the President of the cor-

poration or its board of directors before it would be in force and effect.

While it appears that the agent Dampeer did not have the express authority to fix the terms of employment with appellee and other salesmen, nevertheless we think there is ample evidence in the record to justify the jury finding that he did have the "apparent authority." Only two witnesses testified, the appellee and appellant's bookkeeper. Appellee testified that he was first employed as a salesman by the agent Dampeer in 1947 at a salary of $75 per week, with the promise that a raise would be later forthcoming, and went to work for the Company on the following morning. Appellee further testified he did not know Mr. Hall, President of appellant Company, but met him one time in New Orleans at a sales conference. In December, 1947, in addition to appellee's salary of $75 per week, he was given a check for $650. In January, 1948, appellee said he told Dampeer that he could not continue to work for the company unless some arrangement was made whereby he would know definitely what remuneration he was to receive. In reply, according to appellee, Dampeer promised to pay him $650 on each $250,000 worth of sales plus $75 a week, payable July 1 and before Christmas Day. All of the salary arrangements were made between Dampeer, the Company's agent, and appellee. It is without dispute that Dampeer had the authority to hire appellee and to offer a salary of $75 per week.

We think that the testimony objected to by appellant was properly admitted in evidence. The heart of appellant's appeal is based on his assertion that there is no evidence in the record tending to show that Dampeer had the authority, apparent or implied, to promise a commission of $650 per quarter million dollars sales. Appellant contends that the commission alleged to have been promised was so "unusual or unreasonable" as to fairly put a prudent man upon his guard, citing T. H. Baker & Co. v. Kellett-Chatham Machinery Company, Tex.Civ.App., 84 S.W. 661. In the Baker case, supra, appellants failed to establish that the contract was in the

apparent scope of the agent's authority and that they contracted with him in good faith without knowledge of the limitations fixed by the defendant upon the authority of the agent. We think the testimony here raises an issue of fact, as to the "apparent" authority of Dampeer, which the jury answered in appellee's favor. The commission amounted to approximately a quarter of one per cent of the gross sales and to an increase in salary of $25 per week, provided the appellee sold during the year a half million dollars of goods. It could hardly be contended that a raise in pay of from $75 to $100 per week, based on satisfactory performance, would be so "unusual or unreasonable" that the trial court would be compelled to conclude that such a raise was, as a matter of law, not within the apparent scope of the agent's authority.

This case was tried on appellee's contention that the agent Dampeer had the apparent or ostensible authority to make the contract of employment alleged. We think appellee, in his first supplemental answer, sufficiently plead the necessary elements of estoppel under the accepted theory that every reasonable intendment of the pleader must be indulged. Sigel v. Buccaneer Hotel Co., Tex.Civ.App., 40 S.W.2d 168, 175. In 2 Tex.Jur. p. 425, the doctrine of apparent authority is stated as follows: "When a principal has placed an agent in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is led to believe that the agent has authority to perform acts usually done in a business of that kind, one dealing with the agent is justified in presuming such authority to have been given." We believe, under the evidence in this case, the jury was warranted in its finding that the agent Dampeer did have the apparent authority to make the contract in question.

The jury also found that the President of the Company, D. C. Hall, after learning of the alleged contract, had ratified the same, and we are again of the opinion that such finding is supported by the evidence in the record. The appellee

Willis testifies, that in February of 1949, while he was still working for the Company and on the occasion of his second meeting with Mr. Hall, "I gave him the figures on it and he said they would take care of me on it." Again, sometime later, on a trip with Mr. Hall to Houston, appellee says: "I asked him (Hall) about it again and he said I will be up there and take care of you on what Mr. Dampeer owes you."

We are of the opinion that, based on the verdict of the jury, the trial court entered the proper judgment and the same is affirmed.