Thomas SAMOHEYL, Appellant,

v.

Virgil BEARDEN et al., Appellees.

No. 15554.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Dec. 4, 1969.

Rehearing Denied Jan. 8, 1970.

Joe W. Steelman, Houston, for appellant.

Talbert, Giessel, Barnett & Stone, Alice Giessel, Houston, for appellees.

COLEMAN, Justice.

This is a guest statute case. The jury returned a verdict favoring appellant, but the trial court rendered judgment non obstante veredicto for the appellee.

The appellant contends that the trial court erred "in refusing to grant appellant's motion for judgment on the verdict and in granting a judgment non obstante veredicto for the appellee Phipps because there was evidence raising a valid inference, that the appellee Phipps would receive, or could expect to receive at some time, a definite, tangible benefit, and because there was evidence raising a valid inference, that this was the most probable motivating influence for the furnishing of the transportation."

■ We agree with the conclusion of the trial court that appellant is a guest within the meaning of Article 6701b, Vernon's Ann.Civ.St. The evidence and the testimony, therefore, must be considered in the light most favorable to the appellant. Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be found in a manner supporting the jury verdict. Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422 (1952).

Mr. Phipps, one of the appellees, was foreman of a large construction job in Galveston County. As foreman it was part of his responsibility to have enough workmen on the job site to insure that the job would proceed on schedule. Mr. Samoheyl was a young man sixteen years of age, who was riding with Mr. Phipps, and several other people, from Houston to the job site. He had worked on the job for two weeks about three weeks before the accident, but he quit the job because it was too hard. It was the first construction job he had tried. The night before the accident he called Mr. Phipps to see if he could go back to work. After talking to Mr. Phipps he was sure he could go to work, although Mr. Phipps did not definitely promise him a job. He was not on the payroll while riding from Houston to Galveston. Mr. Phipps was driving his personal car, and appellant had not agreed to pay for the ride, and did not expect to pay in cash. Appellant testified that he was just "bumming" a ride.

When he reached Mr. Phipps' house, Phipps had already left, but appellant caught up with him a few blocks away. Mr. Phipps owned a Buick station wagon. There were, in addition to the owner, eight people in the car, five members of the work crew, appellant, and two young ladies. They were involved in a collision,

and on this trial, Mr. Phipps was found guilty of negligence proximately causing the accident.

The jury also found that Phipps received a definite tangible benefit from transporting Samoheyl to Galveston on the morning in question, and that such benefit was the motivating influence for Phipps' furnishing transportation to Samoheyl. The answers to these issues were disregarded by the trial court.

■ Before appellant is entitled to recover damages against appellee Phipps, it is his burden to secure findings establishing that he was a passenger for hire rather than merely a gratuitous guest. This burden was met by appellant when he secured jury findings that appellee received a special tangible benefit which was the motivating influence for his furnishing the transportation to appellant. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Raub v. Rowe, 119 S.W.2d 190 (Tex.Civ.App.—El Paso 1938, error ref.).

■ To sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon. Burt v. Lochausen, supra.

Appellant testified with regard to his status as an employee as follows:

"I know that I was going back to work. I don't remember the exact words, but I know I was going to work. I was heading that way. I had carried a few clothes with me and I knew that I could probably get a job down there.

"I think he said 'yes' or something; that maybe he had to talk to somebody or something, but at any rate I was heading that way to work, you know. I was going to go back to work."

Mr. Phipps testified:

"* * * he (appellant) said he wanted to go back to work and his friend, Jer-

ry Sica, you know, was with him. I was doing a fairly important job down there at the time and I let him go, you know, and so many of these buddies will, if one doesn't go, the other one don't go; so I said, 'okay, get in.'

"He asked me whether he could go down there and go to work, and, you know, I stuttered around * * * Then he said, 'well, I want to go anyhow,' and I said, 'okay. If there is a place for you I will use you.'"

Harry F. Arman testified he was a friend of Mr. Phipps, who had hired him to work for B and C Construction Company. At the time of the trial he was working as a foreman for Phipps. He heard them talk about appellant going to the job site with them to work. He thought it was more or less understood that appellant would be able to work when he got down there. He said that Phipps "didn't actually say he (appellant) could work, but he said when he got there he would have time to think about it on the way and he would think about it."

This testimony will not support an inference that appellant had been hired by Phipps at the time of the collision. The most favorable inference to be drawn from the testimony is that appellant expected to go to work for the B and C Construction Company and that Phipps probably would have given him a job. An inference could be drawn that Phipps furnished appellant the transportation in order to be certain that Jerry Sica would be available for work. It is a permissible inference that the prospect of securing appellant as an additional employee for his company, if one was needed, was the motivating influence which caused Phipps to furnish appellant transportation to the job site.

Phipps' testimony supports the inference that the reason he took appellant to Galveston was to secure for his company the services of Jerry Sica. The question arises as to whether the availability of appellant for work, if needed, or the fact

that Jerry Sica's services were assured, by reason of the transportation furnished appellant, constitutes a special tangible benefit to Phipps.

By reason of Phipps' position as foreman it was his responsibility to employ the workmen needed to ensure the successful completion of the job. Mr. Arman testified that the foreman could usually put a man to work on a construction job; that depending on how much money was made on the job, if the foreman does a good job and gets the project finished on time, he has a good chance to get something so that there is always a definite benefit to the foreman to get enough employees to get the job completed as quickly as possible. He did not know whether Mr. Phipps was promised a bonus for an early finish on this job.

Appellant testified that Phipps "might have benefited a little" from furnishing him transportation. "The more men he had on the job the faster he probably would have gotten the job done. He would have probably benefited by that. I think the company pushers, as they call them, I think they get a little more if they get a little more work done. When they get more work done they get a little more. I think they get a percentage or something, I don't know; I am not sure." He further testified that it was "more or less" common knowledge that the faster "they" get the job completed, the more likelihood "they" will get a "bonus or something."

Mr. Phipps testified that if he did a good job he could expect to get raises in pay. His testimony with reference to the possibility of receiving a bonus for the early completion of the job was unfavorable to appellant.

There is no testimony that men capable of doing common labor were in short supply, or that appellant's services would materially affect the completion date of the job. There was evidence that Jerry Sica's services were particularly desired by Mr. Phipps because he was experienced and would work on a narrow beam over the water.

■ The testimony as to benefits to be expected by Mr. Phipps from the furnishing of transportation for appellant is largely speculative. The only benefit to Phipps suggested by the evidence is that he might be able to better perform his own job by assuring a more adequate labor supply for the job on one day; that this addition to the labor force of one largely inexperienced boy and one experienced man on this date would to some degree expedite the completion of the job; that, if the job was completed early and satisfactorily, Phipps might get a bonus, depending on the amount of the profit realized, or he might get a raise in pay. These possible inferences only demonstrate the highly speculative nature of the evidence, which furnishes no support for the finding of a definite, tangible benefit to Phipps. There is no evidence that the prospect of financial benefits to himself motivated Phipps to furnish the transportation. An expectation on the part of Phipps, that by securing the services of Sica, and, possibly, of appellant, he would be able to perform his own job better is not such a definite, tangible benefit to Phipps as to constitute appellant a passenger for hire rather than a gratuitous guest. Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022 (1940).; Autry v. Spiering, 407 S.W.2d 826 (Tex.Civ.App.—Corpus Christi 1966, ref.n.r.e.); Berentsen v. Bellinghausen, 403 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1966); Dietrich v. F. R. Young Company, 400 S.W.2d 572 (Tex.Civ.App.—1st Dist.1966, ref.n.r.e.); Choisser v. Ramey, 314 S.W.2d 664 (Tex.Civ.App.—Waco 1958, ref.n.r.e.).

The judgment is affirmed.