**Reversed and Remanded and Memorandum Opinion filed February 7, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00120-CV

## ZIAD ELAAZAMI, Appellant

## V.

## LAWLER FOODS, LTD., Appellee

### On Appeal from the 151st District Court
### Harris County, Texas
### Trial Court Cause No. 2007-68080

## MEMORANDUM OPINION

After Lawler Foods, Ltd. fired Ziad Elaazami in 2006, he sued to recover an unpaid bonus allegedly due to him for work performed in 2005. The jury returned a verdict for Elaazami on his breach of contract claim; the trial court granted Lawler Foods' motion for judgment notwithstanding the verdict. We reverse and remand.

### BACKGROUND

Lawler Foods was established in 1976 by Bill and Carol Lawler. Their son, Mike Lawler, began working for the company in 1989 and has worked for the company full-time since 1997. When Elaazami worked for the company, Bill was the president, Carol

was the executive vice president, and Mike was the vice president of operations and Elaazami's direct supervisor. Elaazami testified that Lawler Foods is a "family-run business, everything is done on a handshake and a word."

The company hired Elaazami in 2002 as the director of accounting, finance, and information technology.[1] Elaazami testified that he had a conversation with Bill and Carol in late 2002 or early 2003. They told him he would begin receiving a non-discretionary annual bonus as a member of the "senior management bonus pool." Carol said that Elaazami would be phased into the bonus pool with a 33 percent bonus the first year, a 66 percent bonus the second year, and a 100 percent bonus each year after that.

Lawler Foods allocated 15 percent of the company's post-tax net income each year for senior management bonuses. Kristi Smith, the company's comptroller, created a spreadsheet each year to calculate the bonuses based on the senior management bonus percentages provided to her by Bill or Carol. Lawler Foods paid the bonuses in March following the year in which they were earned.

Smith was promoted in 2003 and began reporting directly to Mike; some of Elaazami's job functions were assigned to Smith at that time. Bill and Mike told Smith that she would be eligible for a senior management bonus as well. Elaazami testified that he learned about the reorganization in 2003 from a meeting with Bill, Mike, and Steve Kempa, the vice president of sales. Elaazami testified that he was told he and Smith each would receive a 25 percent bonus in 2003 and a 50 percent bonus every year after that.

Lawler Foods paid Elaazami a 25 percent bonus in 2004 for work performed in 2003 and a 50 percent bonus in 2005 for work performed in 2004.[2] Elaazami testified that in early 2005 and again in late 2005, Mike promised him a 2006 bonus for work he

---

[1] When Elaazami first started at Lawler Foods, Mike asked Elaazami what title Elaazami wanted to have because Mike said that he "wasn't really big on titles . . . it's a family-owned business and, you know, it's ultimately about the responsibilities that you have."

[2] The 2004 bonus was $50,996.97 and the 2005 bonus was $85,887.27. Elaazami's gross wages for those years were $94,433.40 and $135,662.06, respectively.

performed in 2005. Mike fired Elaazami on February 14, 2006. Lawler Foods paid senior management bonuses to Mike, Bill, Kempa, Smith, and four other employees in March 2006. Lawler Foods did not pay Elaazami a bonus in 2006 for work he performed in 2005.

Elaazami sued for breach of contract, promissory estoppel, and quantum meruit; he also sought attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008). The trial court signed a partial summary judgment in favor of Lawler Foods on Elaazami's promissory estoppel and quantum meruit claims, but it allowed the contract claim to go to trial. The jury answered "yes" to Question 1 in the charge: "Did Ziad Elaazami and Lawyer [sic] Foods, Ltd. agree that Lawler Foods, Ltd. would pay Ziad Elaazami a bonus in 2006 based on net profits of Lawler Foods, Ltd. for the year 2005?" The jury was charged on the law of actual and apparent authority, and it awarded Elaazami $42,500 in damages.

Lawler Foods filed a motion for judgment notwithstanding the verdict under Texas Rule of Civil Procedure 301, arguing that (1) there was no evidence of a promise to support a unilateral contract; (2) there was no evidence of a binding or enforceable agreement; (3) the statute of frauds bars any oral contract made in early 2003; and (4) any promises for a bonus were illusory. The trial court granted the motion, specifically finding that the evidence was legally insufficient to support the jury's verdict and that any promises for a bonus were illusory. Regarding the sufficiency of the evidence, the trial court explained, "There is no statement in the record of an actual definite promise actually stated orally or in writing in 2005 by anyone at Lawler Foods, Inc. that Plaintiff would, in fact, receive such a bonus in exchange for some performance."

## ANALYSIS

Elaazami argues that the trial court erred by granting judgment notwithstanding the verdict because (1) there is more than a mere scintilla of evidence to support the jury's finding that Lawler Foods promised in late 2005 to pay Elaazami a bonus in 2006

3

for work he performed in 2005; and (2) the promise for a bonus was not illusory. Lawler Foods contends that the trial court correctly granted judgment notwithstanding the verdict because (1) there is no evidence that anyone with authority to speak for Lawler Foods promised Elaazami a bonus; and (2) any promise to pay Elaazami a bonus is barred by the statute of frauds.[3]

We reverse the trial court's judgment because (1) there is some evidence that Mike made a promise to Elaazami in late 2005; (2) there is some evidence that Mike had apparent authority to make this promise on behalf of Lawler Foods; and (3) a contract predicated on an oral promise in late 2005 to pay a bonus in March 2006 is not barred by the statute of frauds.

## I. Standard of Review for Judgment Notwithstanding the Verdict

We will affirm a trial court's decision to grant a judgment notwithstanding the verdict if there is no evidence to support the jury's findings on an issue necessary to liability. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). We apply the standards for "no evidence" embodied in a legal sufficiency review. *Hartland v. Progressive Cnty. Mut. Ins. Co.*, 290 S.W.3d 318, 321 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Thus, we will affirm a judgment notwithstanding the verdict if (1) there is a complete absence of evidence of a vital fact; (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Hartland*, 290 S.W.3d at 321 (citing *City of Keller*, 168 S.W.3d at 810).

---

[3] On appeal, Lawler Foods no longer relies on a contention that the bonus promise is not enforceable because it is illusory. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299 (Tex. 2009). Therefore, we do not address this contention. Elaazami argues that if we uphold judgment notwithstanding the verdict, we should reverse the trial court's granting of summary judgment to Lawler Foods on Elaazami's claims for quantum meruit and promissory estoppel. We do not reach this issue in light of our disposition of the appeal.

We must review the evidence in the light most favorable to the verdict and assume that the jury resolved all conflicts in accordance with the verdict. *City of Keller*, 168 S.W.3d at 820. We credit evidence favorable to the jury's verdict if reasonable jurors could, and we disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The final test is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

## II.     Evidence of a Promise Made in Late 2005

Elaazami contends there is legally sufficient evidence of a promise made in late 2005 to pay him a bonus in March 2006. He points to his testimony about a conversation with Mike in late 2005:

> Q.     Okay. Now, so did Mike Lawler discuss your bonuses at one of those Thursday meetings near the end of 2005, or at the beginning of 2006?
>
> A.     They were always discussed, but there was one specific incident where he discussed my bonus and Kristi's bonus specifically.
>
> Q.     When did that take place?
>
> A.     It was towards the end of 2005.
>
> Q.     And did also these discussions occur in 2006, around February of 2006?
>
> A.     Yes. They were ongoing. I mean, they were on everybody's mind, so they happened more than once.
>
> Q.     All right. Tell us what you can recall about these discussions regarding the bonus with Mike Lawler first.
>
> A.     It was — I think everybody was kind of drifting out of meetings. And Kristi had a set of financials. Must have been towards the beginning of the month or something like that.
>
> So she had her financials and Mike was looking at the net income numbers. And he was kind of eyeballing what his bonus was going to be for that year and he said that means that you guys are probably going to be half of that.

5

Which I mean, it was not — it was not a surprise. It was nothing shocking about it or any surprise. I mean, it was — it wasn't news because I knew that that was going to be the case.

\* \* \*

Q. Okay. Now, with respect to the meeting in late 2005, you said a definitive promise was made in late 2005?

A. Correct.

Q. Please tell me what definitive promise was made to you in late 2005.

A. That we would be getting half a senior management bonus for the year 2005.

\* \* \*

Q. Okay. What definitively was said to you?

A. That — basically that we would be getting a half a senior management bonus, Kristi and I.

\* \* \*

Q. And who made the comment?

A. Mike.

Lawler Foods argues that this testimony from Elaazami is no evidence that Mike promised a bonus in late 2005. Lawler characterizes this testimony as "evidence that Elaazami might get a bonus, and therefore not evidence of a promise to pay him a bonus." For this argument, Lawler Foods relies on *Samoheyl v. Bearden*, 448 S.W.2d 850, 853 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.).

*Samoheyl* involved the predecessor to Texas's "guest statute." *Id.* at 851. The guest statute relaxed the standard of care a driver owed to his or her passenger who was a gratuitous guest. *See Whitworth v. Bynum*, 699 S.W.2d 194, 195 (Tex. 1985) (declaring a subsequent version of the statute unconstitutional); *see also* Tex. Civ. Prac. & Rem. Code

6

Ann. § 72.001 (Vernon 2008) (current version declared unconstitutional by *Colvin v. Colvin*, 291 S.W.3d 508, 512 (Tex. App.—Tyler 2009, no pet.)).

In *Samoheyl*, The First Court of Appeals held there was no evidence that the plaintiff was a "passenger for hire rather than a gratuitous guest" so as to convey a "tangible benefit" to the driver. 448 S.W.2d at 853. The evidence in *Samoheyl* was speculative because it would have required multiple possible inferences regarding the "tangible benefit" to the driver, a construction foreman, for transporting a "largely inexperienced boy" to Galveston County. *Id.* There was no evidence that the plaintiff had been hired by the driver to do construction work at the destination or that the driver would have hired the plaintiff upon reaching the destination, though it was a possibility. *Id.* at 852. There was testimony that the driver "might have benefited a little" from driving the plaintiff because extra workmen "might" have helped the driver get a raise or "might" have helped the driver get a bonus "if the job was completed early and satisfactorily." *Id.* at 853.

*Samoheyl* is inapposite, and Elaazami's testimony is not so speculative that it amounts to a mere surmise or suspicion. A reasonable jury could conclude from Elaazami's testimony that Mike made a definitive promise in late 2005 to pay half of a senior management bonus to him in 2006. Accordingly, we hold there is some evidence that Elaazami was promised a bonus to be paid in 2006 for work he performed in 2005.[4]

## III.    Mike Lawler's Apparent Authority to Promise a Bonus

Lawler Foods contends there is no evidence that anyone other than Carol or Bill had authority to promise a bonus on behalf of Lawler Foods in 2005. Elaazami concedes

---

[4] Elaazami also pointed to other statements in 2002, 2003, and early 2005 that he attributed to Mike Lawler, Carol Lawler, Bill Lawler, and Steve Kempa. We need not address these other statements because the evidence recited in the text of this opinion is legally sufficient to establish that Mike made an independent promise in late 2005.

that Mike did not have actual authority[5] but argues that Mike had apparent authority. The jury was charged on this issue as follows:

> Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

*See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Elaazami contends that Lawler Foods' conduct would lead a reasonable person in Elaazami's position to believe that Lawler Foods bestowed upon Mike indications of authority to promise a bonus.

Lawler Foods placed Mike, the son of the two top-ranking officers of a "family-run business," in the position of vice president of operations as Elaazami's direct supervisor. The mere appointment of a person as a "vice president" does not by itself establish apparent authority as a matter of law for the person to execute employment contracts on behalf of the company. *See Mo., Kan. & Tex. Ry. Co. v. Faulkner*, 88 Tex. 649, 651–52, 32 S.W. 883, 884 (1895) (by nature of his office alone, the vice president of a railroad company had no apparent authority to bind the company in an employment agreement with another employee for a one-year term).[6] But when a company appoints a

---

[5] *See, e.g.*, *Douglass v. Panama, Inc.*, 487 S.W.2d 228, 233 (Tex. App.—Houston [14th Dist.] 1972) (finding no actual authority of the president of a corporation to promise employees bonuses because under Texas statutes "the business and affairs of a corporation are managed by the board of directors and not by . . . anyone else in the absence of an agreement or, as to third parties, apparent authority"), *aff'd* 504 S.W.2d 776 (Tex. 1974).

[6] *See also* RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. e(4) (2006) ("The office of vice president by itself does not carry actual or apparent authority to bind the corporation. The designation of a person as vice president does not have a standardized or customary meaning associating particular functions or authority with the position."); 20A Robert W. Hamilton et al., *Texas Practice Series: Business Organizations* § 36.6 (2d ed. 2004) ("[T]he vice-president normally has no inherent authority merely by virtue of his office . . . ."); *cf. Ennis Bus. Forms, Inc. v. Todd*, 523 S.W.2d 83, 85 (Tex. Civ. App.—Waco 1975, no writ) ("[I]t is the settled rule in this state that the president of a corporation is not invested with actual or apparent authority to bind his company by contract merely because of his position.").

8

person as a vice president with a defined managerial scope, such as "vice president for operations," the Restatement suggests this person "has a customary level of authority over the specified functional area analogous to that of a branch manager over the affairs of a branch." RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. e(4) (2006) ("If a corporation permits a vice president to exercise significant transactional functions and to make or appear to be in control of operational decisions, it creates a basis on which actual or apparent authority may arise.").

Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position. *See Shahan-Taylor Co. v. Foremost Dairies*, 233 S.W.2d 885, 890–891 (Tex. Civ. App.—San Antonio 1950, writ ref'd n.r.e.) (local branch manager had apparent authority to bind corporation in contracts incident to the "ordinary and usual business" of the corporation); *Campbell Paint & Varnish Co. v. Ladd Furniture & Carpet Co.*, 83 S.W.2d 1095, 1096 (Tex. Civ. App.—Fort Worth 1935, writ dism'd) (manager of the local store "had apparent authority to do for his master those things which are in the usual course of the business"); *cf. Nelms v. A & A Liquor Stores, Inc.*, 445 S.W.2d 256, 258–59 (Tex. Civ. App.—Eastland 1969, writ ref'd n.r.e.) (president of a family-owned corporation had no apparent authority to bind corporation in contract with another officer for lifetime employment; the president of a corporation who also acts as a general manager has apparent authority to employ others but not to make a contract for services of an unusual and extraordinary nature); *Brown v. Grayson Enters., Inc.*, 401 S.W.2d 653, 656–57 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e.) (general manager and chief executive officer lacked apparent authority as a matter of law to promise an employee lifetime employment because such a contract was not "usually made by such officers in the ordinary course of the corporation's business. . . [T]he general authority of such officers to employ embodies only the right to make contracts of a usual and reasonable sort[, and] an ordinary competent person, familiar

9

with the situation and with the ordinary methods of business, considering the matter in the light of everyday experience, [could not believe] this contract . . . formed a natural and ordinary part of the management of the corporation's affairs.").[7]

Here, Carol told Elaazami that he would be placed in the "senior management bonus pool," and Lawler Foods paid Elaazami a "senior management bonus" in 2003 and 2004 in addition to his salary. Mike's late 2005 promise of a 50 percent senior management bonus was the same percentage of a senior management bonus that Lawler Foods paid Elaazami for his work during the prior year. Thus, it was not unusual or extraordinary for Mike to promise a 50 percent senior management bonus in 2005 given the prior course of dealing between the parties. *See Tex. Wine & Liquor Co. v. Willis*, 239 S.W.2d 695, 696 (Tex. Civ. App.—Fort Worth 1951, no writ) (some evidence established that a company's agent had apparent authority to promise an employee a bonus equal to one-third of his normal salary because the bonus was not "so 'unusual or unreasonable' that the trial court would be compelled to conclude that such a raise was, as a matter of law, not within the apparent scope of the agent's authority;" company had paid the same bonus to the employee the previous year); *see also Southline Equip. Co. v. Nat'l Marine Serv. Inc.*, 598 S.W.2d 340, 342–43 (Tex. App.—Houston [14th Dist.] 1980, no writ) (affirming trial court's implied finding of apparent authority of the shop

---

[7] *See generally* RESTATEMENT (THIRD) OF AGENCY § 1.03 cmt. b (2006) ("[A]n agent is sometimes placed in a position in an industry or setting in which holders of the position customarily have authority of a specific scope. Absent notice to third parties to the contrary, placing the agent in such a position constitutes a manifestation that the principal assents to be bound by actions by the agent that fall within that scope. A third party who interacts with the person, believing the manifestation to be true, need not establish a communication made directly to the third party by the principal to establish the presence of apparent authority . . . ."); RESTATEMENT (THIRD) OF AGENCY § 3.03 cmts. b-d (2006) ("A principal may also make a manifestation by placing an agent in a defined position in an organization . . . . Third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting this may not be so. . . . Apparent authority in an organizational setting may also arise from the fact that a person occupies a type of position that customarily carries specific authority although the organization has withheld such authority from that agent."); 20A Hamilton et al., *supra*, § 36.6 ("Much implied and apparent authority is based on the power of position. When the corporation appoints someone to an office, the very fact of appointment is a representation on which . . . reasonable third persons may rely in determining the extent of apparent authority.").

foreman of a company to enter into a contract with a third party for repairs to the company's equipment; "course of dealing" showed that the company had contracted for similar repairs from the same third party on prior occasions so that the third party would be reasonable in believing the agent had authority to contract for the recent repairs).

Another indication of authority comes from evidence that Lawler Foods increased Elaazami's salary in 2003, 2004, and 2005 after Mike told Elaazami in one-on-one meetings that Elaazami would receive raises. The jury could conclude that Lawler Foods' conduct would indicate to a reasonable person in Elaazami's position that Mike had authority to promise additional compensation to a subordinate employee within his department. *See Carter Grocer Co. v. Day*, 144 S.W. 365, 366–67 (Tex. Civ. App.—Fort Worth 1912, writ dism'd w.o.j.) (vice president with direct supervision over salespersons had apparent authority to enter into a one-year employment contract with a current salesperson; employee dealt with the agent frequently on matters of employment, and the company had on prior occasions paid the employee the salary promised to him by the agent); s*ee also Elliot v. Great Nat'l Life Ins. Co.*, 611 S.W.2d 620, 621–22 (Tex. 1981) (senior vice president of marketing had apparent authority to contract on behalf of the corporation for a subordinate employee's one-year employment agreement; employee made trips to meet with corporation's other employees at the request of the agent, and the corporation paid for the trips; the agent's communications with the employee facilitated the hiring of the employee).

Finally, Elaazami testified that Bill and Carol frequently were absent from the business and lived most of the time in Colorado. Elaazami explained that he had little interaction with Bill and Carol, and he saw them maybe once or twice while he worked at Lawler Foods. Elaazami further testified that Mike was "the highest-ranking person there . . . in 2005 that [he] dealt with on a frequent basis." Taken in conjunction with other evidence described above, this testimony provides some support for a finding of apparent authority. *See A. J. Anderson Co. v. Citizens' Hotel Co.*, 8 S.W.2d 702, 703, 705 (Tex.

Civ. App.—Fort Worth 1928, writ ref'd) (affirming trial court's finding of implied authority for vice president and general manager of a company to bind the company in contract for stock subscriptions; evidence showed that board of directors conducted minimal business, the president of the company spent most of the time at a resort, and the vice president had primary management of the company); s*ee also Willis*, 239 S.W.2d at 696 (finding some evidence that a company's agent had apparent authority to promise an employee a bonus in part because the employee dealt only with the agent and only met the president of the company one time at a sales conference).

Accordingly, when viewed cumulatively and in the light most favorable to Elaazami, the evidence at trial is sufficient for the jury to have concluded that Mike had apparent authority to promise Elaazami a bonus on behalf of Lawler Foods in late 2005.

## IV.    Statute of Frauds

Lawler Foods also contends that the trial court's judgment notwithstanding the verdict should be affirmed because the statute of frauds bars any promise made to Elaazami in this case as the agreement was not performable within one year. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (Vernon 2009). Pointing to Elaazami's testimony about his discussion with Bill and Carol in 2003, Lawler Foods argues that "[t]he evidence conclusively proved that any oral promise for a bonus was specifically a three-year period bonus agreement."

As explained above, however, the record contains sufficient evidence of an independent promise by Lawler Foods made in late 2005 to pay Elaazami a bonus in March 2006 for work he performed in 2005. This agreement was performable within one year and is not barred by the statute of frauds. *See Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775–76 (Tex. 1974).

12

## V.    Remand for Attorney's Fees

Elaazami requested in his opening brief on appeal that we remand this case to the trial court for a determination of attorney's fees if we reverse the trial court's judgment notwithstanding the verdict. Lawler Foods argues that Elaazami has waived a remand for a determination of his attorney's fees because Elaazami cited no authority in his opening brief to support the request.

Rule 38.1(i) requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Appellate courts have held that we possess discretion to deem a point of error waived on appeal due to inadequate briefing. *See, e.g.*, *Russell v. City of Bryan*, 919 S.W.2d 698, 707 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994)).

Elaazami requested a remand for attorney's fees in its opening brief as part of its prayer for relief. *See* Tex. R. App. P. 38.1(j) ("The brief must contain a short conclusion that clearly states the nature of the relief sought."). After Lawler Foods raised the briefing waiver issue, Elaazami provided substantive argument with citation to authorities for why we should remand for attorney's fees. Lawler Foods has made no substantive argument in its response or subsequent letter brief, other than briefing waiver, for why we should render judgment rather than remand.[8]

Under the facts of this case, we decline to hold that Elaazami "waived" his statutory right to attorney's fees by failing to cite authority in his opening brief. When we reverse a trial court's judgment, we "must render the judgment that the trial court

---

[8] Furthermore, before trial, there was concern about the evidence of attorney's fees that would be placed before the jury, and counsel for Lawler Foods said, "Your Honor, I think I can help resolve this for efficiency sake and to avoid confusion. We'd be happy to try that issue to the Bench." Counsel clarified, "If necessary." After the trial court signed the judgment notwithstanding the verdict, counsel for Elaazami asked for the opportunity to put on evidence of attorney's fees. The trial court correctly explained there was no basis for attorney's fees so long as the judgment notwithstanding the verdict remained; the trial court further suggested that the court of appeals would remand for a hearing on attorney's fees if it reversed the judgment notwithstanding the verdict.

should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial." Tex. R. App. P. 43.3. Elaazami has a statutory right to attorney's fees under Section 38.001 of the Civil Practice and Remedies Code if he is able to provide the trial court with evidence of a reasonable fee. *See Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Thus, remand is the appropriate disposition. *See MasTec N. Am., Inc. v. El Paso Field Servs., L.P.*, 317 S.W.3d 431, 456 (Tex. App.—Houston [1st Dist.] 2010, pet. granted) (remanding for determination of attorney's fees after reversing the trial court's judgment notwithstanding the verdict on the plaintiff's breach of contract claim); *McGuire, Craddock, Strother & Hale, P.C. v. Transcon. Realty Investors, Inc.*, 251 S.W.3d 890, 899 (Tex. App.—Dallas 2008, pet. denied) (same).

## CONCLUSION

We sustain Elaazami's first issue and overrule Lawler Foods' cross-points. We reverse the trial court's judgment notwithstanding the verdict and remand for the entry of a judgment consistent with the jury's verdict and for a determination of attorney's fees.

/s/    William J. Boyce
Justice

Panel consists of Justices Brown, Boyce, and McCally.